STATE OF GEORGIA, for use, etc., *v.* SOUTHERN EXPRESS COMPANY.

1. The act approved August 17, 1903 (Acts 1903, p. 18), which allows the amount of an occupation tax imposed by a municipality, paid by a corporation liable for a franchise tax under the act approved December 17, 1902 (Acts 1902, p. 37), to go in reduction of the amount due to the municipality on its franchise tax, is not limited to corporations that pay occupation taxes in consideration of the exclusive use of a franchise, but applies generally to such as are subject to a franchise tax, and that have paid a municipal occupation tax for exercising the franchise.

2. The act of 1903 above referred to does not violate article 7, section 2, paragraph 1, of the constitution, which requires that "All taxes shall be uniform upon the same class of subjects and ad valorem on all property," etc., because it allows a corporation to deduct from the municipal tax on its franchise the amount paid by such corporation to the municipality as an occupation or privilege tax or charge for exercising the franchise.

3. Nor does such act offend the constitutional guaranty in the bill of rights (Civil Code, § 5699) that protection to person and property shall be impartial and complete.

Argued November 7, 1908. — Decided August 10, 1909.

8

Illegality of execution. Before Judge Ellis. Fulton superior court. March 21, 1908.

By an act approved December 17, 1902 (Acts 1902, p. 37), the General Assembly provided for and required the payment of taxes on franchises, and prescribed a method for the return and payment of such taxes. The act provides that the valuation for taxation of such franchises, in each county and municipality in which the franchise is exercised, shall be apportioned to each county and municipality as is now provided by law for the apportionment of the personal property of railroad companies, and the taxes due to each county or municipality on such franchises shall be collected and enforced as now provided by law in the case of other taxes due the same by railroad companies. By an act approved August 17, 1903 (Acts 1903, p. 18), it was enacted: (1) "That whenever the tax, or any part of the tax, assessed on, or on account of, any franchises as defined in the act approved December 17th, 1902, providing for the payment of taxes on franchises, is due and payable to or for the use of any county, city, town, or village in which the tangible property is located, and it shall appear that the person, partnership, association, or corporation affected has paid, or is liable to pay, to such county, city, town, or village, for its exclusive use within the year for which taxes on or on account of the franchises is assessed under any agreement therefor, or under any statute, ordinance, resolution, or by-law requiring the same, any sum based upon a percentage of gross receipts, or any other income, or any occupation or privilege tax or charge, or any sum of money on account of, or as a consideration for, such franchise or privilege granted to or possessed by such person, partnership, association, or corporation, all amounts so paid, or liable to be paid, for the exclusive use of such county, city, town, or village, except the money paid for the ad valorem taxes due such county, city, town, or village, on account of the tangible or physical property located therein, shall be deducted from the portion of the tax due such county, city, town, or village on account of the franchise owned or possessed by such person, partnership, association, or corporation." (2) "That any money that may be paid or expended by such persons, partnership, association, or corporation for bridge rentals, or for paving or repairing of pavement of any street, highway, or public place, shall not be included within the amounts provided in section 1 of this act, to be deducted from the portion of

the franchise tax payable to the city, county, town, or village." (3) "That the sums referred to in section 1 of this act shall be paid to the county, city, town, or village entitled thereto, notwithstanding the passage of the franchise-tax act hereinbefore referred to, but that such sums, when paid, shall be considered a payment on account of, or in full as the case may be, of the tax due such county, city, town, or village, on account of the franchise; and that if the amount so payable is greater than the amount of the franchise tax due such county, city, town, or village, such payment shall be in full thereof; and if less, the difference in amount shall be paid, but no greater credit shall be allowed on account of such payment than the amount of the franchise tax due such county, city, town, or village for the current year." On February 20, 1907, W. A. Wright, comptroller-general, issued his fi. fa. against the Southern Express Company for $250 as its tax for the year 1904, due the City of Atlanta, and interest at seven per cent. per annum from December 20, 1904, under and by virtue of the laws of the State of Georgia providing for the taxation of railroads and other corporations in this State for municipal purposes, said amount being the unpaid balance due the City of Atlanta by the Southern Express Company upon its intangible property located in the City of Atlanta, and upon the value of its franchises pertaining thereto, as fixed by the returns made to his office, and the assessment thereon made in obedience to the law for the year 1904; this balance being due, and payment having been refused by this company. This fi. fa. was levied upon the property of the express company, which interposed its affidavit of illegality, wherein it alleged that the fi. fa. was proceeding illegally against it, "for the reason, that for the year 1904 the comptroller-general of the State of Georgia assessed the intangible property of the Southern Express Company, which said intangible property is called a franchise; and a tax was collected thereon in favor of the City of Atlanta, and paid by the Southern Express Company to the City of Atlanta in the manner pointed out by the statutes; that the tax on the franchise of the Southern Express Company in favor of the City of Atlanta exceeded the sum of two hundred and fifty dollars; and that for the year 1904 the City of Atlanta levied an occupation or privilege tax or charge against the Southern Express Company, and the said Southern Express Company paid said occupation or privilege

tax or charge to the City of Atlanta for the year 1904. Inasmuch as the franchise tax for the year 1904 due to the City of Atlanta exceeded the occupation or privilege tax or charge assessed by the City of Atlanta, the amount paid by the Southern Express Company to the City of Atlanta, as an occupation or privilege tax or charge for the year 1904, should, under the statute of Georgia, have been credited against the said franchise tax due to the City of Atlanta by the Southern Express Company for the year 1904; and had the same been so credited, there would have been no balance due the City of Atlanta, or to the State of Georgia for the use of the City of Atlanta, for any tax of any kind whatsoever for the year 1904." This affidavit was accepted by the sheriff and returned to the superior court for trial; whereupon the City of Atlanta made a written motion to dismiss the illegality upon the ground that the act of 1903, referred to in the affidavit of illegality, was inapplicable, and, if applicable, that the same was unconstitutional. The court overruled the motion to dismiss, and sustained the illegality; and exception is taken to this judgment.

*James L. Mayson* and *William P. Hill,* for plaintiff.

*McDaniel, Alston & Black,* for defendant.

EVANS, P. J. (After stating the foregoing facts.)

1. The motion of the City of Atlanta (which is in the nature of a demurrer) called in question the applicability of the act of 1903 to the facts as alleged in the affidavit of illegality; the contention of the city being that under the terms of that act no deduction is allowed from taxes due on account of franchises except where the occupation tax or charge is paid to the city for the exclusive use of the franchise or privilege on which the franchise tax is assessed. The caption of the act of 1903 is as follows: "An act to provide for the deduction, on franchises due counties, cities, towns, and villages, of all amounts paid, or liable to be paid, under any agreement therefor, or otherwise, to such counties, cities, towns, and villages by the person, partnership, association, or corporation affected, except amounts due for ad valorem taxes on account of the physical property located therein, and for other purposes." It indicates a legislative purpose to provide for a deduction, on franchise taxes due to cities, of amounts paid under agreement therefor, or *otherwise,* except amounts due for ad valorem taxes on physical property. The first section of the act makes plain that the

General Assembly, among other things, provided that *any* occupation or privilege tax or charge, except money paid for ad valorem taxes on physical property, shall be deducted from the portion of the franchise tax due such city. The exception in terms of ad valorem taxes on tangible property, in section 1, and also charges for paving, bridge rentals, etc., in the second section of the act, indicates that other charges, such as business taxes, were not intended to be excluded from its provisions. The act of 1902 imposed a tax upon special franchises, and the act of 1903 undertook to allow a deduction of so much of the tax as might be paid the city for separate and distinct kinds of charges, including an occupation or privilege tax or charge. Construing the act of 1903 as a whole, and in connection with the act of 1902, of which it is complementary, it is clear that the occupation or privilege tax referred to in the act of 1903, which is to be credited as a pro tanto payment of the franchise tax, was not limited to such taxes as are paid as a consideration for the franchise. We therefore think that the occupation tax alleged to have been paid by the express company to the City of Atlanta is covered by the act of 1903, according to the allegations of the affidavit.

2. The City of Atlanta assails the constitutionality of the act of 1903 as applied to the case under consideration, as violative of article 7, section 2, paragraph 1, of the constitution (Civil Code, §5883), which provides that "All taxes shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." It is not controverted that the acts of 1902 and 1903 are general laws; but the point is made that if a corporation is allowed to deduct from the tax on its franchise the amount paid on account of an occupation tax, this constitutional provision will be impinged upon. The constitutional requirement that taxes shall be ad valorem relates to taxes on property. If the act were so construed as to partially exempt persons or corporations who pay an occupation tax from taxes on their property, then the act would be open to this objection. *Southern Express Co.* v. *Stewart,* 109 *Ga.* 80 (35 S. E. 73). But if a construction can be given the act that the franchise tax is not to be disturbed—not to be lessened—but that the statute so operates as to limit the right of a munici-

pality to collect from persons or corporations liable for the franchise tax an occupation tax or other charge, which it has no power to exact except by permission of the legislature, then the constitutional provision as to uniform and ad valorem taxation would not be infracted. The power to tax is incident to the State because of its sovereignty. A municipal corporation does not possess this power to any extent unless conferred by the constitution or laws of the State; and when a municipality undertakes to exercise the power of taxation, it is only by reason of this delegated authority. *Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 270). Our constitution delegates no power of taxation to municipalities, and their authority to exact a tax must be obtained from the legislature. In creating a municipality the legislature may in its discretion withhold the power to exact an occupation tax, or it may limit the exercise of such power. If it can do so in the first instance, it may withdraw or limit such power theretofore granted. It is a principle universally recognized that it is legitimate, in directly imposing special taxes on a business, or in delegating such power to a municipality, that different businesses may for such purposes be classified by the legislature, and the only limitation is that the classification must not be arbitrary, but must rest upon some reasonable basis. In imposing the franchise tax the legislature evidently considered the nature of the tax and the subject-matter upon which it operated; that it was imposing a tax upon intangible property—a tax upon a subject-matter incidental to the tangible property and the right to use that tangible property under some lawfully authorized power. Probably this consideration induced the legislature to classify persons and corporations liable to the special franchise tax which it imposed, and to provide that when a municipality imposed an occupation or privilege tax, if the same was less than the franchise tax, it should go as a pro tanto payment upon the franchise tax. There is nothing in the act of 1903 which prohibits a municipality from imposing an occupation tax (provided it is reasonable) which exceeds the amount of the municipal tax assessed on the franchise.

3. No reason occurs to us why the legislature may not constitutionally enact that persons or corporations who paid taxes on account of a franchise should not be required to pay to the city an additional sum for a tax on the occupation or business. It would

not create any difference in the rate at which the franchises were taxed, nor would it exempt any person or corporation liable for a franchise tax. All persons and corporations subject to a franchise tax are treated alike in its provisions. The grouping of those engaged in a business liable to a franchise tax, and regulating the occupation tax which a city may require of such, is a reasonable classification. Such legislation does not offend the constitutional guaranty in the bill of rights (Civil Code, §5699) that protection to person and property shall be impartial and complete.

It was argued that the tax imposed by the City of Atlanta was a license, and not an occupation tax. The judgment under review is that rendered upon a demurrer which takes as true the allegations of the affidavit of illegality, the legal sufficiency of which is challenged. In its affidavit of illegality the express company avers that the $250 which it paid the City of Atlanta, and which it claims as a payment upon the franchise tax assessed against it, was an occupation tax or charge, and we have dealt with the case in that light.

We concur with the trial judge that the demurrer should have been overruled; but as the judgment excepted to not only overruled the demurrer but also sustained the illegality, it is affirmed with direction that so much thereof as sustained the illegality be stricken, so that, if the allegations of fact in the affidavit are traversed, an issue may be formed thereon and tried as in illegality cases.

*Judgment affirmed, with direction. All the Justices concur, except Lumpkin, J., disqualified.*