PUBLIX-LUCAS THEATERS INC. *et al*
*v.* CITY OF BRUNSWICK.

No. 16816.   October 11, 1949.   Rehearing denied November 18, 1949.

208

*Gowen, Conyers & Dickey,* for plaintiffs.

*B. N. Nightingale,* for defendant.

WYATT, Justice. ■ Insofar as Publix-Lucas Theaters Inc. is concerned, this is not a proper case for resort to the Declaratory Judgment Act, for the reason it has a full and complete remedy without regard to this act. See *Mayor &c. of Athens* v. *Gerdine,* 202 *Ga.* 197 (42 S. E. 2d, 567), and cases cited.

As to E. H. Diemmer, since he has not started the operation of his business and has paid no license or tax, and prays for a construction of the ordinance before beginning business, the case does properly fall under the Declaratory Judgment Act, and for that reason this court decides the entire case.

■ The tax in question is sought to be levied under the provisions of Ga. L. 1872, p. 151, and the provisions of Ga. L. 1876, p. 159.

Section 12 of the act of 1872, supra, reads as follows: "The said mayor and council shall have the authority and power to levy and collect a tax upon all taxable property within the limits of said city, upon real and personal property, stocks in money, corporations, choses in action, incomes and commissions derived from the pursuit of any profession, faculty, trade or calling, upon dividends, banks, insurance, express and other like companies or their agencies, and upon all other sources of profit, not expressly prohibited or exempt by the laws of the State, thus to raise such sum of money as may be necessary for the safety, convenience, benefit and interest of said city, the maintaining of the municipal government and the payment of the debts thereof; Provided, said rate of taxation shall not exceed three per cent. upon a fair valuation of the property taxed." Section 20 of said act reads as follows: "That the said mayor and council shall have the authority and power to regulate and control the conduct of peddlers and itinerant traders within the limits of said city, by taxation or otherwise, and also to tax theatrical performances, exhibitions and shows of any kind whatever, in said city, except such peddlers, traders and shows as are exempt from taxation under the laws of this State."

The provisions of Ga. L. 1876, supra, here pertinent are as follows: "Sec. 1. Be it enacted, etc., that from and after the passage of this act, the 12th section of the 'Act to consolidate and amend the several acts incorporating the City of Brunswick,' approved August 27, 1872, be so amended that the same shall read: 'Provided, the rate of taxation shall not exceed one and one-half of one percentum upon a fair valuation of the property taxed.'

"Sec. 2. Be it further enacted, that the mayor and council shall have power and authority to require all persons, firms, companies and corporations, whether they reside within the corporate limits of said city or not, engaged or about to engage in any business, calling, trade or profession, within said corporate limits, to register their names and business, trade, calling or profession in the office of the Clerk of Council, at such times and under such regulations as the mayor and council may prescribe.

"Sec. 3. Be it further enacted, that all bankers, brokers and commission merchants be required to pay for their business license, during each year, a sum not exceeding three hundred dollars."

"Sec. 6. Be it further enacted, that all other persons, firms, companies and corporations be required to pay for their registration and license a sum not exceeding two hundred dollars."

If there is authority for the levy of the tax in question, it must be found in the above-quoted portions of the charter of the City of Brunswick. Approaching this question, certain well-settled principles of law should be kept in mind.

" 'Statutes which impose restrictions upon trade or common occupations, and which levy an excise or tax upon them, must be construed strictly;' 'statutes levying duties or taxes upon subjects or citizens are to be construed most strongly against the government and in favor of their subjects or citizens, and their provisions are not to be extended, by implication, beyond the clear import of the language used;' 'revenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not, therefore, to be liberally construed; and hence, whenever there is a just doubt, that doubt should absolve the taxpayer from his burden.' " *Mystyle Hosiery Shops Inc.* v. *Harrison,* 171 *Ga.* 430 (155 S. E. 765).

These rules of law were announced by this court as far back as *Mayor &c of Savannah* v. *Hartridge,* 8 *Ga.* 23, and have been as recently reaffirmed as *Mayor &c of Savannah* v. *Savannah Electric & Power Co.,* 205 *Ga.* 429 (54 S. E. 2d, 260).

"Municipal corporations can levy no tax, general or special, upon the inhabitants of the municipality or upon property therein, unless the power to do so be plainly and unmistakably conferred upon them by the State. *Albany Bottling Co.* v. *Watson,* 103 *Ga.* 503 (30 S. E. 270); 2 Dill. Mun. Cor. (4th ed.), 763; Cooley on Taxation (2d ed.), 678; *Southern Express Co.* v. *Rose Co.,* 124 *Ga.* 581, 588 (53 S. E. 185, 5 L. R. A. (N. S.) 619); *State of Georgia* v. *Southern Express Co.,* 133 Ga. 113 (65 S. E. 282). The burden is upon every political division of the State, which demands taxes from the people, to show the authority to exercise it in the manner in which it has been imposed." *Lane* v. *Unadilla,* 154 *Ga.* 577 (114 S. E. 636).

The modern tendency to ever broaden and extend the field of taxation makes it necessary to restate and reaffirm these fundamental rules of law that are older than this court itself. With these rules of law in mind, we now go forward to a consideration of the nature of the tax sought to be imposed in the instant case, and whether or not it is a valid tax levy.

"In order to determine the intent of the legislature in including a term designating a particular business as subject to a license by a city, the statute should be considered as of the time of enactment, in the light of economic and social conditions prevailing at such time." 53 C. J. S., 481, § 10. Before the day of the moving-picture shows as we know them today, there was a time when the show business was almost exclusively circus and other itinerant shows. Then the show business, insofar as the power of municipalities to tax and regulate was concerned, could be, and was, classed along with barrooms, pool halls, and other like businesses, over which, from the very nature of the business, the municipality had very broad regulatory power. Not so of the moving picture shows of today. It has become as stable and permanent, and as much a part of the business world, as the grocery store and the drugstore; and the power of the municipality to regulate is no broader than that applying to business concerns of that kind.

The next question presented is, in the light of what has been said above, what kind of tax is here sought to be imposed?

It is so well settled by the many decisions of this court that the legislature may authorize a municipality to levy, and the municipality may levy, a license tax, an occupation tax, and a property tax, by some authorities stated to be a tax on property, on business, and also a capitation tax, that we deem it unnecessary to cite those authorities again here. It is just as well settled that a municipality may levy only one license tax or occupation tax against a business for the period covered by the tax, usually one year. It is conceded that, at the time the tax here sought to be enforced was levied, the plaintiff in error, Publix-Lucas Theaters Inc., had paid a "license and specific tax" of $200 each for two theaters operated by it and $100 for a third, making a total of $500 for the three picture shows; and that E. H. Diemmer would be required to pay $200 when his

"Drive-In-Theater" was completed and ready to be operated. The manager of Publix-Lucas Theaters Inc., in Brunswick for more than ten years, testified that the ordinance now under attack would require this concern to pay an additional amount of more than $15,000. This testimony was not contradicted. The ordinance under which the $500 was paid by Publix-Lucas Theaters Inc., and under which the $200 was demanded of E. H. Diemmer, seems to have been adopted either on February 2 or February 4, 1949. At any rate, this ordinance was in effect when the ordinance now under attack was adopted. The title of this ordinance reads as follows: "An ordinance to regulate certain kinds of business within the City of Brunswick, Georgia, fix the amount of license or business tax to be paid for the privilege of pursuing such business and prescribing the penalties for the violation of this ordinance, and for other purposes." It is contended that this was a license ordinance, and did not therefore prohibit the City of Brunswick from levying at a later date an occupation tax for the additional amount. We are, therefore, confronted with the question, did this ordinance provide for a license tax or an occupation tax?

"An occupation tax has been distinguished from a license. fee or tax imposed under the police power in that the former is primarily intended to raise revenue, while the latter is primarily intended as a means of, or aid to, regulation." 33 Am. Jur. 326, § 2.

"It is sometimes difficult to determine with accuracy whether a given enactment provides for a license as a police measure or authorizes it simply as a tax on certain occupations, although it is often important to determine this question in order to pass properly on the validity of the law. The amount of the license fee or tax is generally the test as to whether it is for regulation or revenue." 53 C. J. S. 477, § 10 (b).

"There is a clear distinction recognized between a license, granted or required as a condition precedent before a certain thing can be done, and a tax assessed on the business which that license may authorize one to engage in: 42 *Georgia*, 596. A license is a right granted by some competent authority to do an act which, without such license, would be illegal. A tax is a rate or sum of money assessed on the person, property, etc., of

the citizen: Bouv. L. D.; 36 *Georgia,* 460. A license is issued under the police power of the authority which grants it. If the fee required for the license is intended for revenue, its exaction is an exercise of the power of taxation: Cooley's Const. Lim., 201. The tax assessed upon complainant by the City Council of Augusta, by the ordinance of January 5th, 1874, although called a 'license tax,' is more properly a tax than a license fee, or a fee exacted in order to secure the right to engage in a business which, without paying for and obtaining such authority, would be illegal." *Home Insurance Co. of N. Y.* v. *Augusta,* 50 *Ga.* 530, 537.

"A legislative grant to a municipality of a power to tax occupations and privileges does not enable it to create a privilege for the sole purpose of taxing it. Likewise a municipality which has simply been given the power to impose a license tax on a business or occupation may not divide the business or occupation into its constituent elements, parts, or incidents and levy a separate tax on each or any element." 53 C. J. S. 483, § 10 (a).

"It is well settled that a license tax may not, under the guise of the police power, be imposed for revenue purposes. . . Whether a license exaction is a tax is not affected by the fact that nonpayment is punishable as a misdemeanor. . . The name given a license law by the legislature is not controlling." 33 Am. Jur. 339, § 19.

We conclude, applying the above principles of law to the facts in this case, that the tax of $500 paid by Publix-Lucas Theaters Inc. prior to the enactment of the ordinance now under consideration, as well as the $200 that would be required of E. H. Diemmer, was, regardless of by what name called by the municipality, an occupation tax and not a license fee or tax. Since one occupation tax had been demanded of the plaintiffs in error, and actually paid as to one of them, the City of Brunswick was without authority to levy another and different occupation tax for the year in question. Certain we are that the municipality, after levying and collecting an occupation tax, could not break the business up into its different elements for the purpose of collecting additional occupation taxes.

In this view of the case, it becomes unnecessary to pass upon the other questions raised, including the constitutional question.

From what has been said in this opinion, it follows that the judgment complained of was error.

*Judgment reversed.* *All the Justices concur.* *Duckworth, C. J., concurs specially.*

DUCKWORTH, C. J., concurring specially. I concur in the judgment, but not in the opinion insofar as it holds that this is not a proper case to be brought under the Declaratory Judgment Act.

### ON MOTION FOR REHEARING.

The motion for rehearing insists that this court overlooked the cases of *Mayor &c. of Savannah* v. *Crawford & Lovell,* 75 *Ga.* 35, and *Williams* v. *Mayor &c. of Waynesboro,* 152 *Ga.* 696 (111 S. E. 47), and contends that the ruling in the instant case is in conflict with those two decisions.

Both cases are distinguishable on their facts. In each the ordinance under attack simply amended a previous ordinance levying an occupation tax by increasing the amount thereof before the date the return was required to be made by the taxpayer. In the instant case, no effort was made to amend any previous ordinance levying an occupation tax. The ordinance simply levied a totally new and independent occupation tax. The effect of the ordinance in the instant case was, after one occupation tax had been collected, to divide the business or occupation into its constituent elements, parts, or incidents for the purpose of levying or collecting an entirely new and independent occupation tax. We see no conflict.

*Motion denied.* *All the Justices concur.*