A98A0371. HADLEY et al. v. CITY OF ATLANTA.
(502 SE2d 784)

SMITH, Judge.

The issue in this appeal is the validity of an annual renewal charge imposed by the City of Atlanta beginning in 1995 upon the holders of city-issued Certificates of Public Necessity and Convenience (CPNC). Lee Hadley, a taxicab driver, taxicab company owner, and the holder of such a certificate, and the Atlanta Taxicab Owners Association, Inc., a voluntary trade association whose members hold such certificates, challenged the propriety of the charge, alleging that it was unlawful for several reasons. Cross-motions for summary judgment were filed. The trial court denied the plaintiffs' motion and granted the City's motion in part and denied it in part. The plaintiffs appeal from the trial court's grant of partial summary judgment to the City.[1] Upon review, we find that the trial court correctly concluded that the renewal charge was a fee and not a tax and that its imposition was lawful. We therefore affirm the judgment below.

The total number of vehicles for hire within the City is limited by the City, and every such vehicle must have a valid CPNC to operate within the City. The initial cost of a CPNC is $6,000. Prior to 1995, no annual renewal fee existed. In 1995, the City amended several provisions of Chapter 162 of its Code of Ordinances. As amended, § 162-61.1 imposed a new annual "renewal fee" of $150 upon the holder of a city-issued CPNC.

---

[1] This appeal was filed in the Supreme Court. The Supreme Court found that its exclusive appellate jurisdiction had not been invoked because the constitutionality of the city ordinance had not been drawn into question and the trial court had not specifically passed upon its constitutionality. *Marr v. Dept. of Ed.*, 264 Ga. 841 (452 SE2d 112) (1995). The Supreme Court also found that because the equitable relief sought by appellants and denied by the trial court was merely ancillary to the legal questions in issue, its general jurisdiction was not invoked. The case was therefore transferred to this Court.

Hadley has been the holder of a CPNC for a number of years. He is the registered owner of one CPNC, and his company is the registered owner of three other certificates. Hadley also pays a business license tax, a motor vehicle for hire driver's permit fee, and a company permit fee.

1. Plaintiffs contend the trial court erred in concluding that the annual renewal charge on CPNCs is a regulatory fee and not a tax.

It is well established that the basic power to tax belongs to the State. A municipality may levy taxes only when the power to do so is expressly conferred upon it in plain and unmistakable terms either directly in the Constitution or by statute. *Camden Tel. &c. Co. v. City of St. Marys*, 247 Ga. 687, 688-689 (2) (279 SE2d 200) (1981). The City is authorized under OCGA § 48-13-6 to levy occupation taxes, and it does so. It is also authorized under OCGA § 48-13-9 (b) (3) to impose regulatory fees upon taxicab and limousine operators.

The distinction between a tax and a fee is that a tax is imposed primarily as a revenue-raising measure, while a regulatory fee, or license, is imposed under the police power and is intended primarily as a means of or an aid in regulating a particular occupation or activity. *Richmond County Business Assn. v. Richmond County*, 224 Ga. 854, 856 (1) (165 SE2d 293) (1968); *Publix-Lucas Theaters v. City of Brunswick*, 206 Ga. 206, 212 (56 SE2d 254) (1949).

Although it is often important to decide whether a particular charge is a tax or a fee, it is frequently difficult to discern whether a given enactment provides for a regulatory fee or authorizes simply a tax. *Publix-Lucas Theaters*, supra. In analyzing whether a charge is a tax or a fee, the inquiry must be whether the ordinance operates merely as a means to generate revenue or whether it acts effectively as a precondition, or license, for engaging in the occupation.

OCGA § 48-13-9 (a) provides: "A local government is authorized to require a business or practitioner of a profession or occupation to pay a regulatory fee only if the local government customarily performs investigation or inspection of such businesses or practitioners of such profession or occupation as protection of the public health, safety, or welfare or in the course of enforcing a state or local building, health, or safety code, but no local government is authorized to use regulatory fees as a means of raising revenue for general purposes; provided that the amount of a regulatory fee shall approximate the reasonable cost of the actual regulatory activity performed by the local government."

Vehicles for hire operating within the City come under the jurisdiction of the City's Bureau of Taxicabs & Vehicles for Hire. From the funds appropriated by the City, the Bureau pays salaries and other expenses associated with its various regulatory activities. It is undisputed that the Bureau is the entity charged with responsibility for

enforcing city regulations governing vehicles for hire. The Bureau issues applicable permits for the operation of cab companies and controls the suspension and revocation of such permits. Company permits cost $100, with an annual renewal fee of $50. The Bureau investigates each company to ensure that requirements for such companies, set forth in the City Code, are met.[2] It also issues permits to drivers of vehicles for hire. Such permits cost $30 with an annual renewal fee of $20. The Bureau investigates all drivers, to ensure their compliance with Code requirements. Driving records and criminal records are inspected; in cases where cab drivers are not U. S. citizens, their immigration status must be checked.

The Bureau also issues and regulates City-issued CPNCs. Bi-annual inspections of all vehicles are performed to ensure that the vehicles are maintained pursuant to City Code regulations. Non-complying vehicles must be repaired and re-inspected. The Bureau issues monthly stickers bearing the CPNC number to each vehicle to which a CPNC has been assigned. These stickers identify vehicles permitted to operate within the City and distinguish them from "gypsy" cabs unlicensed by the City and aid the City in regulating the operation of unlicensed vehicles.

Plaintiffs' principal argument in support of their contention that the annual renewal fee on the CPNC is a tax, rather than a fee, rests on the fact that the monies collected, like all monies collected from each of these fees, are deposited into the City's general fund and are not earmarked specifically for operations of the Bureau. Plaintiffs maintain that because the Bureau's annual budget does not fluctuate in accordance with the amounts collected, the renewal fee does not "approximate the reasonable cost of the actual regulatory activity performed," and the charge therefore must be a tax, rather than a fee.

It is undisputed, however, that the Bureau receives the lion's share of its operating funds from the City's general fund (with a small portion coming from airport revenues), and that the yearly appropriations from the general fund exceed the amounts collected from CPNC renewal fees.

We agree with the trial court that although the CPNC renewal charges are not earmarked specifically for use by the Bureau, it is clear that monies at least equal to those collected as CPNC renewal fees are given to the Bureau and used to defray the actual cost of the regulatory activities with which it is charged. Because it is clear that the cost of regulation exceeds the fees collected, the activities and

---

[2] The Code requires that the company maintain an office within the City, have at least 25 vehicles in its fleet, be accessible 24 hours a day, and maintain and furnish to the City a list of drivers.

businesses regulated are within the City's authority, and it is clear that the Bureau performs actual regulatory services, we conclude that the trial court correctly determined that the annual renewal charge is not a tax but a regulatory fee.[3]

2. Plaintiffs also maintain that the annual renewal charge is unlawful because the City is authorized by OCGA § 48-13-9 (a) to regulate only professions, occupations, or businesses, and the annual renewal fee is imposed upon the holder of a CPNC, which is not a profession, occupation, or trade.[4] The City concedes that holding a CPNC is not a separate occupation or business. But the City is authorized to regulate the occupation or trade in which CPNCs are used: the business of operating taxicabs and vehicles for hire. In regulating that business, the City may lawfully enact ordinances that impose fees for CPNCs, so long as the fees approximate the costs of regulating the business in which the CPNC is used.

3. In a related enumeration of error, plaintiffs assert that even if the City has authority to impose a fee upon the taxicab business, it has no authority to charge several regulatory fees in connection with one business or occupation. Relying upon the authority of *Publix-Lucas Theaters*, supra, plaintiffs contend the City " 'may not divide the business or occupation into its constituent elements, parts, or incidents and levy a separate tax on each or any element.' [Cit.]" Id. at 213. But *Publix-Lucas Theaters* involved an occupation tax, not a regulatory fee. Id. And that is a crucial difference.

Confusion arises from the indiscriminate use, in many cases, of the terms "license," "tax," "occupation tax," and various combinations of these terms. The cases make clear, however, that this holding in *Publix-Lucas Theaters* refers to *taxes*, not to regulatory fees; the authority of a municipal corporation to classify businesses for taxing purposes does not allow them to divide businesses into separate constituent elements that are taxed separately. See, e.g., *Derst Baking Co. v. Mayor &c. of Savannah*, 180 Ga. 510 (179 SE 763) (1935) (tax on use of city streets for business purposes not a tax on deliveries or sales from trucks but privilege tax for use to carry on business on streets, and did not impermissibly divide business into constituent elements for tax purposes); *Steuer v. City of Atlanta*, 176 Ga. 433 (168

---

[3] We note that the question of whether the *amount charged* for the renewal fee complies with the requirement in OCGA §§ 48-13-5 (6) and 48-13-9 (a) that it "approximate" the cost of regulation is a separate issue. That issue was excepted by the trial court from its grant of summary judgment to the City and remains to be tried by a jury. The trial court's denial of summary judgment to the City on this issue was not appealed by the City.

[4] Plaintiffs have not challenged the initial cost of a CPNC in this action; they challenge only that portion of the amended ordinance imposing an annual renewal charge on the CPNC. But our analysis of this argument necessarily addresses the City's imposition of *any* regulatory fee, including the initial charge, on a CPNC.

SE 7) (1933) (ordinance taxing rental libraries on graduated scale according to number of books did not attempt to divide business into constituent elements for purposes of taxation); *Underwriters Salvage Co. &c. v. City of Atlanta*, 174 Ga. 678, 684-685 (163 SE 893) (1932) (although company was agent of insurance companies, its entire business was salvage and therefore tax on those conducting salvage business in City did not impermissibly divide business into constituent elements for tax purposes); *Hewin v. City of Atlanta*, 121 Ga. 723, 733-734 (49 SE 765) (1905) (giving customers trading stamps is a "mere incident" of mercantile business and may not be taxed separately).

This principle is eminently reasonable. When a tax to engage in a general business is exacted, another tax may not be imposed upon the doing of a particular portion of the business already taxed. But the purpose of fees is not to raise revenue; it is to cover the cost of regulating certain activities for the protection of the public. And their lawfulness and validity are analyzed differently. If the authority exists to regulate the particular occupation or trade, various regulatory activities are necessary for the public's protection, and as long as the fees charged approximate the costs of the necessary regulatory activity, they are not prohibited. For example, municipal corporations are authorized under OCGA § 48-13-9 (b) (23) to regulate hotels and motels. Various regulatory activities may be necessary to protect the public adequately in connection with that business; hotels commonly include food service establishments on their premises and often include newspaper vending boxes and health clubs, all of which are also listed in the statute. OCGA § 48-13-9 (b) (9), (15), (26). Since regulatory activity is necessary in connection with all these parts of the hotel, a city is authorized to impose regulatory fees on the hotel's owner to cover the regulatory costs involved.

So, too, with a taxicab or vehicles for hire business. Several regulatory activities are involved. The City is legitimately concerned with the qualifications and records of drivers of the vehicles for hire; with the location, accessibility, and insured state of the companies; and with the safety and comfort of vehicles. Separate fees cover the City's costs of inspecting and regulating the various aspects of the business. As long as these fees approximate the regulatory costs involved, they are appropriate and lawful.[5]

The trial court did not err in granting partial summary judgment to the City.

---

[5] As mentioned in n. 3, supra, the trial court found that the City had not adequately shown whether this renewal fee approximated the regulatory cost involved and denied the City's motion for summary judgment on this point, leaving it to be determined by a jury. No appeal was filed from this ruling.

*Judgment affirmed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 16, 1998.

*George Spears*, for appellants.

*Clifford E. Hardwick IV, Lisa S. Morchower, Michael H. Hilliard*, for appellee.