**SECOND DIVISION**
**MILLER, P. J.,**
**ANDREWS and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 15, 2018**

# In the Court of Appeals of Georgia

A18A0677. COTTON PICKIN' FAIRS, INC. et al. v. TOWN OF
     GAY.

MILLER, Presiding Judge.

In this appeal, we consider whether OCGA § 48-13-6 (b) authorized the Town
of Gay ("The Town") to levy an occupation tax on the exhibitors participating in the
Cotton Pickin' Fair ("The Fair"), which is held in the Town. Cotton Pickin' Fairs, Inc.
and The 1911 Society, Ltd. appeal from the trial court's order, which determined that
their challenge to the occupation tax failed. We conclude that the Town was not
authorized to levy an occupation tax on the exhibitors under OCGA § 48-13-6 (b)
because the exhibitors do not have a "location or office" in the Town for purposes of
the Fair, and were thus exempted from taxation. See OCGA §§ 48-13-5 (3), 48-13-6
(b). We therefore reverse.

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review a trial court's summary judgment ruling de novo, construing the evidence and all reasonable inferences favorably to the nonmovant.

(Citations and footnotes omitted.) *Barclay v. Stephenson*, 337 Ga. App. 365 (787 SE2d 322) (2016).[1]

So viewed, the record shows that the Town is an incorporated municipality. Cotton Pickin' Fairs, Inc. is a for-profit corporation that sponsors the Fair, which is a two-day event held in May and October of each year. The property on which the Fair is held belongs to Ellen Gay McEwen ("Ellen"), who leases the land to Cotton Pickin' Fairs annually.[2] In preparation for each Fair, Ellen selects approximately 350 exhibitors from hundreds of applicants from around the country.

---

[1] We note that although the Town filed a declaratory judgment action, the trial court converted the appellants' motions to dismiss into motions for summary judgment. Therefore, we apply the standard of review applicable to a decision on a motion for summary judgment.

[2] Ellen is also the president and sole owner of Cotton Pickin' Fairs.

In August 2006, the Town enacted a new occupation tax ordinance, providing, relevantly:

(a) An occupation tax is hereby levied annually upon all businesses and practitioners of professions and occupations with one or more *locations or offices* within the corporate limits of the town . . . in the amount of $30.00 for each business location or office with the town.

(Emphasis supplied.) The ordinance contained exemptions for several types of entities, including nonprofit organizations.

Shortly after the enactment of this ordinance, John McEwen – Ellen's husband and the secretary-treasurer of Cotton Pickin' Fairs – formed The 1911 Society, Ltd., a domestic nonprofit corporation. The 1911 Society was organized in an attempt to meet the requirements of an agricultural fair sponsor under OCGA § 2-2-8. After the exhibitors for each Fair are selected, Cotton Pickin' Fairs assigns all exhibitor contracts to The 1911 Society.

Prior to the Town's enactment of its 2006 ordinance, each exhibitor paid the Town a $30 occupation tax and a $5 application fee. After the enactment of the ordinance, The 1911 Society, through its attorney, informed the exhibitors that they

3

were "operating under a contract with a tax-exempt agricultural fair,"[3] and the Town was therefore not authorized to levy an occupation tax against the exhibitors for their participation in the Fair. It is undisputed that Cotton Pickin' Fairs has consistently paid its occupation taxes since 2006.

In July 2015, the Town filed a complaint against Cotton Pickin' Fairs and The 1911 Society, seeking a declaratory judgment regarding The 1911 Society's purported status as a tax-exempt agricultural fair sponsor; an injunction barring the Fair from being held in the Town until all Fair-related taxes and fees are paid; and monetary damages for the appellants' alleged interference with the Town's collection of occupation taxes from the exhibitors.[4] Cotton Pickin' Fairs and The 1911 Society moved to dismiss the complaint, arguing, inter alia, that under OCGA § 48-13-6 (b), the Town's authority to impose an occupation tax did not extend to the exhibitors because the exhibitors did not have a "location or office" in the Town for purposes of the Fair. Cotton Pickin' Fairs also counterclaimed for a declaratory judgment and

---

[3] OCGA § 48-13-13 (5), cross-referencing OCGA § 2-2-8.

[4] The Town initially sued only Cotton Pickin' Fairs, but then added The 1911 Society to the lawsuit.

4

sought an injunction barring the Town from attempting to collect taxes from the exhibitors on the same grounds.

The trial court converted the motions to dismiss into motions for summary judgment, having deemed it necessary to consider evidence beyond the pleadings. See OCGA § 9-11-12 (b). Based on a review of the evidence, the trial court found, inter alia, that the appellants lacked standing to argue that the exhibitors did not have a location or office in the Town. Nevertheless, the trial court also addressed the issue on the merits, rejecting the appellants' contention that a "temporary work site" exception under OCGA § 48-13-5 (3) barred the Town from collecting a business license fee or occupation tax from the exhibitors. This appeal followed.

1. In interrelated enumerations of error, the appellants contend that the trial court erred in ruling that the "temporary work site" exception in OCGA § 48-13-5 (3) did not apply to the exhibitors. We agree.[5]

_____

[5] The Town's ordinance also provides for an occupation tax "upon out-of-state persons with no location or office in the state," pursuant to OCGA § 48-13-7. Neither the parties nor the trial court addressed the applicability of OCGA § 48-13-7 (b) to this case, or the provisions of the Town's ordinance pertaining to out-of-state businesses, and there is no argument on appeal in these regards either. Thus, we address solely whether the "temporary work site" exception in OCGA § 48-13-5 (3) barred the Town from taxing the exhibitors under OCGA § 48-13-6 (b).

"Municipal corporations, unlike the sovereign State, possess no inherent power of taxation." *Lewis & Holmes Motor Freight Corp. v. City of Atlanta*, 195 Ga. 810, 812-813 (25 SE2d 699) (1943). Thus, "[a] municipality may levy taxes only when the power to do so is expressly conferred upon it in plain and unmistakable terms either directly in the Constitution or by statute." (Citation omitted.) *Hadley v. City of Atlanta*, 232 Ga. App. 871, 872 (1) (502 SE2d 784) (1998). "Statutes levying . . . taxes upon subjects or citizens are to be construed most strongly against the [taxing authority], and in favor of their subjects or citizens, and their provisions are not to be extended, by implication, beyond the clear import of the language used." (Citation omitted.) *Publix-Lucas Theaters v. City of Brunswick*, 206 Ga. 206, 210 (2) (56 SE2d 254) (1949). "[D]oubts, if any, as to the power sought to be exercised must be resolved against the municipality." *Lewis & Holmes Motor Freight Corp.*, supra, 195 Ga. at 813.

Preliminarily, it is clear that the appellants had standing to argue that the exhibitors could not be taxed pursuant to OCGA § 48-13-6 (b), on the basis that they do not have a "location or office" in the Town for purposes of the Fair. "Standing is in essence the question of whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues, and litigants must establish their standing

6

to raise issues before they are entitled to have a court adjudicate those issues." (Citation and punctuation omitted.) *Sherman v. Dev. Auth. of Fulton County*, 324 Ga. App. 23 (749 SE2d 29) (2013).

The Town argues that the appellants lacked standing because they are not the entities that would pay the occupation taxes, and therefore the appellants' rights suffered no special injury. However, this argument is irreconcilable with the specific facts of this case because the Town chose to sue the appellants for monetary damages for the non-payment of the same occupation taxes supposedly owed by the exhibitors.

The Town's complaint set forth an alternative claim against the appellants requesting "compensation for all fees/taxes intentionally withheld" from the Town. At the summary judgment hearing, the Town elaborated that it was requesting $100,000 from the appellants for the four-year period that the appellants did not pay the exhibitors' taxes. The Town, through its own lawsuit, placed the appellants' rights in issue and triggered standing in the appellants to argue that the Town could not tax the exhibitors.

Because the Town sought monetary damages directly from the appellants, stemming from the occupation taxes which the Town claims were owed by the exhibitors, we conclude that the appellants were entitled to have the trial court

7

adjudicate the issue of whether the exhibitors were exempt from the tax under OCGA §§ 48-13-5 (3) and 48-13-6 (b). See, e.g., *Sawnee Elec. Membership Corp. v. Georgia Dept. of Revenue*, 279 Ga. 22 (1) (608 SE2d 611) (2005) ("There is no question that an association may have standing in its own right to seek judicial relief from injury to itself.") (citations omitted); *Bailey v. City of Atlanta*, 296 Ga. App. 679, 682 (1) (675 SE2d 564) (2009) ("To establish a legal interest sufficient to maintain standing under the Declaratory Judgment Act, a party must show that his rights are in direct issue or jeopardy. The party must show that the facts are complete and that the interest is not merely academic, hypothetical, or colorable, but actual.") (citations and footnotes omitted).

Turning to the merits of the appellants' arguments, OCGA § 48-13-6 (b) permits municipalities "to provide . . . for the levy, assessment, and collection of occupation tax on those businesses and practitioners of professions and occupations which have one or more locations or offices within the corporate limits." By statute, "[l]ocation or office shall include any structure . . . where a business, profession, or occupation is conducted, *but shall not include a temporary or construction work site which serves a single customer or project*." (Punctuation omitted; emphasis supplied.) OCGA § 48-13-5 (3).

8

The operative question before this Court is whether the exhibitors, while participating in the Fair, conduct business at a "temporary" work site which serves a single "project." If so, the Town was not authorized to levy an occupation tax on the exhibitors under OCGA § 48-13-6 (b).

At the outset, however, we note that OCGA § 48-13-5 does not define the words "temporary"[6] or "project." Therefore, we "look to [their] plain and ordinary meaning[s] as defined by dictionaries." (Citation omitted.) *Mornay v. Nat. Union Fire Ins. Co. of Pittsburgh*, 331 Ga. App. 112, 115 (3) (769 SE2d 807) (2015).

"Temporary" is defined as "[l]asting for a time only; existing or continuing for a limited . . . time; transitory." Black's Law Dictionary (10th ed. 2014). In ordinary usage, the term "project" means a "planned undertaking." Webster's Third New International Dictionary, p. 1813 (1981). See American Heritage Dictionary of the English Language, https://ahdictionary.com ("project" means, inter alia, "[a]n undertaking requiring concerted effort; . . . [a] plan or proposal for accomplishing something").

---

[6] Elsewhere in Title 48, "temporary" is associated with a 10-day period. See OCGA § 48-9-38 (e) (a motor carrier may obtain a 10-day temporary permit).

9

When we apply the plain and ordinary meanings of these words to the facts of this case and construe OCGA § 48-13-6 (b) "most strongly" against the Town as required, we conclude that an exhibitor does not have a location or office in the Town for purposes of the Fair.

First, the exhibitors occupy a temporary work site. The Fair lasts for two days, and an exhibitor's "booth" may be in a building, a shed, or a designated space on grass, gravel, or dirt. Each exhibitor vacates the grounds within two hours after the Fair ends, and an exhibitor is not automatically invited to the next Fair. The Fair, although recurring, is still a transitory event. Thus, even assuming that an exhibitor participates in consecutive Fairs, that exhibitor is nevertheless conducting business at the Fair temporarily.

Next, as to whether the exhibitors' temporary work sites serve a single project, we determine that the Fair is a "planned undertaking" and therefore constitutes such a project. The Fair was created to attract visitors to the Town and assist the community, and it is held on the grounds of a historic farm. The president of Cotton Pickin' Fairs designs, plans, markets, and manages the Fair. She reviews exhibitor applications, selects exhibitors and sends invitation contracts to them, and assigns

exhibitors to one of 10 - 15 categories. She also designates the booth that each exhibitor will occupy, such that similar exhibitors are not placed next to each other.

At the very least, when we construe OCGA § 48-13-6 (b) "most strongly" against the Town, we find that doubt exists as to whether the exhibitors have a location or office in the Town while participating in the Fair. Under our precedent, such doubt *must* be resolved against the Town. *Lewis & Holmes Motor Freight Corp.*, supra, 195 Ga. at 813. See also *Publix-Lucas Theaters*, supra, 206 Ga. at 210 ("Revenue laws are neither remedial statutes nor laws founded upon any permanent public policy, and are not, therefore, to be liberally construed; and hence, whenever there is a just doubt, that doubt should absolve the taxpayer from his burden.") (citation omitted); *Cherokee Brick & Tile Co. v. Redwine*, 209 Ga. 691, 692 (1) (75 SE2d 550) (1953).

The Town urges that the exhibitors are not exempt from occupation taxes because both the sale and delivery of their goods occur within the Town. The Town cites to our decision in *City of Atlanta v. Shrader*, 185 Ga. App. 691 (365 SE2d 449) (1988), in which we found that the City of Atlanta could levy an occupation tax on licensed embalmers and funeral directors who practiced their profession in the city, but did not have any interest in the business premises. Id. at 692-693 (1). The Town

11

also references a second case, *Rossman v. City of Moultrie*, 189 Ga. 681 (7 SE2d 270) (1940), in which the Supreme Court determined that dairy vendors were not exempt from paying an occupation tax to the City of Moultrie under the "traveling salesperson" tax exemption.[7] In that case, the Supreme Court reasoned that although the vendors' farms were located outside the City of Moultrie, the vendors made both sales and deliveries within the city. Id. at 683-685.

The Town's analogies to these cases are unpersuasive. First, neither case implicates the definitions statute at issue here, OCGA § 48-13-5 (3), which specifically sets forth a "temporary work site" exception. Further, both *Rossman* and *Shrader* involved persons who were *regularly* conducting their business within the municipality. See *Rossman*, supra, 189 Ga. at 685 ("We conclude that . . . petitioners were carrying on a regular business within the city."); *Shrader*, supra, 185 Ga. App. at 692 (1) (appellees were engaging in "the regular transaction of their precise licensed business"). We cannot say that an exhibitor's participation in a two-day Fair, to which it may not ever be re-invited, constitutes the exhibitor's regular transaction of its business in the Town. Again, even presuming that an exhibitor is selected for and returns to consecutive Fairs, the fundamental nature of the exhibitor's

---

[7] See OCGA § 48-5-354.

12

participation in the Fair is still periodic. Therefore, the Town's reliance on *Shrader* and *Rossman* is unavailing.

For the preceding reasons, we conclude that the trial court erred in ruling that the exhibitors did not fall under the "temporary work site" exception articulated in OCGA § 48-13-5 (3). Because this exception applied, the Town was not authorized to levy an occupation tax on the exhibitors under OCGA § 48-13-6 (b), and we reverse the trial court's order to the contrary.

2. Given our conclusion in Division 1, we do not address the appellants' remaining enumerations of error.

*Judgment reversed. Andrews and Brown, JJ., concur.*