A04A1602. GEORGIA DEPARTMENT OF REVENUE et al.
v. GEORGIA CHEMISTRY COUNCIL, INC.
(607 SE2d 207)

MIKELL, Judge.

The Georgia Chemistry Council, Inc. ("GCC"), a trade association representing 22 companies in the bio-tech industry, filed a declaratory judgment action against the Georgia Department of Revenue ("GDOR") to challenge the validity of a regulation[1] which interprets the research tax credit codified in OCGA § 48-7-40.12 ("the statute"). The statute allows a tax credit of ten percent of the amount by which a qualified taxpayer's research expenditures exceed a "base amount," which is defined as "the product of a business enterprise's Georgia taxable net income in the current taxable year and the average of the ratios of its aggregate qualified research expenses to Georgia taxable net income for the preceding three taxable years or

---

[1] Ga. Comp. R. & Regs. r. 560-7-8-.42 (2).

0.300, whichever is less."[2] The regulation requires that, in order to be eligible for the tax credit, a business enterprise must have had positive Georgia taxable net income for each of the preceding three years. Ruling on cross-motions for summary judgment, the trial court declared the regulation invalid on the ground that it exceeded the scope of the authority of the statute upon which it was predicated.[3] GDOR appeals. We reverse for the reasons set forth below.

"The test of the validity of an administrative rule is twofold: whether it is authorized by statute and whether it is reasonable."[4] To determine whether the regulation at issue is authorized by the statute upon which it is predicated necessitates an understanding of the statute. We apply the appropriate rules of statutory construction to assist in this process.

> The cardinal rule of statutory construction is to ascertain the legislative intent and purpose in enacting the law and to construe the statute to effectuate that intent. Further, where statutory provisions are ambiguous, courts should give great weight to the interpretation adopted by the administrative agency charged with enforcing the statute. Although this Court is "not bound to blindly follow" an agency's interpretation, we defer to an agency's interpretation when it reflects the meaning of the statute and comports with legislative intent.[5]

The Revenue Commissioner has explicit authority to promulgate regulations "for the enforcement of [the Public Revenue Code] and the collection of revenues [thereunder]."[6]

> All duly enacted regulations carry a presumption of validity. Courts should defer to the agency in matters involving the interpretation of the statutes which it is empowered to enforce. The courts give great deference to executive agencies' policy decisions, because executive agencies provide a "high level of expertise and an opportunity for specialization

---

[2] OCGA § 48-7-40.12 (a) (1), (c).

[3] *Dept. of Human Resources v. Anderson*, 218 Ga. App. 528, 529 (462 SE2d 439) (1995) ("an administrative rule which exceeds the scope of or is inconsistent with the authority of the statute upon which it is predicated is invalid") (citation omitted).

[4] (Citation and punctuation omitted.) *Anderson*, supra. See also *Albany Surgical v. Dept. of Community Health*, 257 Ga. App. 636, 638 (1) (a) (572 SE2d 638) (2002); *Ga. Real Estate Comm. v. Accelerated Courses in Real Estate*, 234 Ga. 30, 32 (2) (214 SE2d 495) (1975).

[5] (Citations and punctuation omitted.) *Hicks v. Florida State Bd. of Admin.*, 265 Ga. App. 545, 547 (1) (594 SE2d 745) (2004).

[6] OCGA § 48-2-12 (a).

unavailable in the judicial or legislative branches" that enables such agencies to "make rules and enforce them in fashioning solutions to very complex problems."[7]

The regulation interprets the statute as follows:

A business enterprise's "base amount" is its Georgia taxable net income in the current taxable year times either (i) the average of the ratios of its aggregate qualified research expenses to Georgia taxable net income for the preceding three taxable years or (ii) 30 percent, whichever is less. In order to calculate the required ratios and be eligible for the research tax credit, a business enterprise must have positive Georgia taxable net income for each of the preceding three taxable years. A business enterprise that incurred a loss or had no Georgia taxable net income during one or more of the prior three taxable years may not claim a research tax credit for the current taxable year.[8]

The crux of this case is whether the Commissioner was authorized to interpret the statute as requiring positive taxable net income for the preceding three years in order to claim the tax credit. Georgia taxable net income is defined in OCGA §§ 48-7-21 (a) and 48-7-27 (a) in terms of income, not loss. OCGA § 48-7-21 (a) provides:

Every domestic corporation and every foreign corporation shall pay annually an income tax equivalent to 6 percent of its Georgia taxable net income. Georgia taxable net income of a corporation shall be the corporation's taxable income from property owned or from business done in this state . . . as defined in the Internal Revenue Code of 1986.

Similarly, the individual taxpayer's Georgia taxable net income is his or her federal adjusted gross income, less deductions.[9] Negative income, on the other hand, is commonly referred to as a "net operating loss."[10] The absence of that term in the statute invites application of

---

[7] (Citations omitted.) *Albany Surgical*, supra at 638 (1) (a). See also *Chevron U. S. A. v. Natural Resources Defense Council*, 467 U. S. 837, 843 (104 SC 2778, 81 LE2d 694) (1984) ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute") (footnote omitted).

[8] Ga. Comp. R. & Regs. r. 560-7-8-.42 (2).

[9] OCGA § 48-7-27 (a).

[10] 26 USC § 172 (c). See *United Dominion Indus. v. United States*, 532 U. S. 822, 825 (121 SC 1934, 150 LE2d 45) (2001); *Title Ins. & Trust Co. v. United States*, 654 F2d 604, 606 (9th Cir.

the principle expressio unius est exclusio alterius, or the express mention of one thing implies the exclusion of another.[11] The General Assembly's use of the term "Georgia taxable net income" and the exclusion of the term "net operating loss" supports GDOR's argument that the legislature intended to require Georgia taxable net income to be expressed as a positive number.

Moreover, we find that the regulation reflects the intent of the General Assembly. The research tax credit is one of the numerous tax incentives that the General Assembly began to enact with the passage of the Georgia Business Expansion Support Act of 1994.[12] The expressed intent of the legislature in enacting the research tax credit statute is simply "to provide for income tax credits for increasing research activities."[13] In so doing, the legislature created a formula requiring the calculation of a base amount. Since the calculation of the base amount also requires the comparison of a number derived from a company's taxable net income for the preceding three years to thirty percent, the Commissioner reasonably required that there be taxable net income for the preceding three years in order to obtain the credit. To find otherwise would render the comparison portion of the statute meaningless. "It is a well-established principle that a statute must be viewed so as to make all its parts harmonize and to give a sensible and intelligent effect to each part."[14]

Moreover, "where one seeks the benefit of an exemption from taxation, any such exemption must be strictly construed and will not be found unless the terms under which it is claimed clearly and distinctly show that such was the intention of the legislature."[15] Further, the case sub judice concerns a tax *credit*, which provides an even greater benefit to the taxpayer than an exemption from taxation. It follows that GCC bears the burden of showing that the legislature intended to allow business enterprises with a net operating loss in at least one of the previous three years to claim the research tax credit. This GCC has not done. Construing this tax credit, as we must, strictly against the taxpayer,[16] we find that the regulation is authorized by the statute upon which it was predicated

---

1981) ("negative income" . . . is not in fact income at all) (punctuation omitted).

[11] See *BankWest v. Oxendine*, 266 Ga. App. 771, 774 (1) (598 SE2d 343) (2004).

[12] See Ga. L. 1994, p. 928.

[13] Ga. L. 1997, p. 461.

[14] (Citation omitted.) *Houston v. Lowes of Savannah*, 235 Ga. 201, 203 (219 SE2d 115) (1975).

[15] (Citations and punctuation omitted.) *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga. App. 141, 145 (1) (542 SE2d 538) (2000). See also *Undercofler v. Capital Automobile Co.*, 111 Ga. App. 709, 717 (1) (143 SE2d 206) (1965).

[16] *CIBA Vision Corp. v. Jackson*, 248 Ga. App. 688, 692 (2) (548 SE2d 431) (2001).

and is reasonable.[17] Therefore, we find the regulation valid.
*Judgment reversed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 23, 2004 — 

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, Warren R. Calvert, Senior Assistant Attorney General, Lesley C. Berggren, Assistant Attorney General*, for appellants. *Smith, Gambrell & Russell, Edward K. Smith*, for appellee.

---

[17] See *Ga. Oilmen's Assn. v. Ga. Dept. of Revenue*, 261 Ga. App. 393, 398-399 (2) (582 SE2d 549) (2003) ("we defer to the DOR on the issue of reasonableness unless there is evidence the regulation is arbitrary and capricious") (citation and footnote omitted).