**February 21, 2017**

# In the Court of Appeals of Georgia

A16A2003. NEW CINGULAR WIRELESS PCS, LLC et al. v. GEORGIA DEPARTMENT OF REVENUE et al.

DILLARD, Presiding Judge.

New Cingular Wireless PCS, LLC; Chattanooga MSA LP; Georgia RSA No. 3, LP; and Northeastern Georgia RSA Limited Partnership ("appellants") filed suit against the Georgia Department of Revenue and Lynnette T. Riley in her official capacity as commissioner ("the Department") following the Department's refusal to issue a refund of what the appellants contend were erroneously paid taxes. The Department moved to dismiss the appellants' action, and this appeal follows the trial court's grant of that motion. For the reasons set forth *infra*, we affirm.

The appellants allege that from 2005 until 2010, they sold wireless Internet access services to Georgia customers, which were exempt from state sales tax under

OCGA § 48-8-2.[1] In November 2010, the appellants filed refund claims with the Department for sales tax that they claimed was, until September 2010, erroneously charged to Georgia customers on the purchase of wireless Internet access service. The Department officially refused to pay the requested refund claims on March 19, 2015. Accordingly, on April 17, 2015, the appellants filed their complaint to challenge this denial.

The Department answered and moved to dismiss for a lack of subject-matter jurisdiction and the failure to state a claim upon which relief could be granted. Thereafter, the Department amended its answer and attached as an exhibit a copy of a global settlement agreement entered into between the appellants and their customers. The Department argued that the complaint should be dismissed because (1) the appellants did not reimburse the alleged illegally collected sales tax to customers before seeking a refund from the Department, in violation of Department Regulation 560-12-1-.25; (2) the appellants lacked standing to file sales-tax-refund claims on behalf of customers for periods prior to May 5, 2009; and (3) the action was barred by Georgia class-action law. Following a hearing on the motion to dismiss, the

---

[1] *See* OCGA § 48-8-2 (39) (F) (specifying that, for purposes of state sales and use tax, "telecommunications service" shall not include, *inter alia*, "Internet access service").

trial court granted it on all three grounds. We then granted the appellants' application to file a discretionary appeal. This appeal follows.

1. The appellants argue that the trial court erred in granting the motion to dismiss after concluding that they must first refund the alleged erroneously collected tax to their customers *before* seeking a refund from the Department. We disagree.

The trial court's order contemplates the question of dismissal under both sovereign immunity/subject-matter jurisdiction and the failure to state a claim upon which relief can be granted, but it appears to ultimately conclude that dismissal is proper on the grounds of sovereign immunity. Nevertheless, we may affirm the grant of a motion to dismiss if it is right for any reason.[2] And setting aside the question of whether appellants' action is also barred on the grounds of sovereign immunity, it is undoubtedly barred by a failure to state a claim upon which relief can be granted because (1) "the allegations of the complaint disclose with certainty that the [appellants] would not be entitled to relief under any state of provable facts asserted

---

[2] *See, e.g.*, *Bobick v. Cmty. & S. Bank*, 321 Ga. App. 855, 869-70 (4) (b) (743 SE2d 518) (2013) (affirming dismissal under "right for any reason" doctrine); *C.C. Leasing Corp. v. Bd. of Tax Assessors of Hall Cnty.*, 143 Ga. App. 520, 521 (239 SE2d 204) (1977) (same).

in support thereof"[3] and (2) the Department has established that the appellants "could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought."[4] This is so even though in deciding a motion to dismiss, "all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."[5] Indeed, even under this forgiving analytical framework, the appellants' action must be dismissed.

OCGA § 48-2-35 of the Public Revenue Code—under which the appellants filed suit against the Department—provides in relevant part that

> [a] taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from such taxpayer under the laws of this state, whether paid voluntarily or involuntarily, and shall be refunded interest[.] . . . Refunds shall be drawn from the treasury on warrants of the Governor issued upon itemized requisitions showing in each instance the person to whom the

---

[3] *Webb v. Bank of Am., N.A.*, 328 Ga. App. 62, 63 (761 SE2d 485) (2014) (punctuation omitted); *accord Austin v. Clark*, 294 Ga. 773, 774-75 (755 SE2d 796) (2014).

[4] *Webb*, 328 Ga. App. at 63 (punctuation omitted); *accord Austin*, 294 Ga. at 775.

[5] *Austin*, 294 Ga. at 775 (punctuation omitted).

refund is to be made, the amount of the refund, and the reason for the refund.[6]

According to our Supreme Court, this statutory authorization to bring an action for a tax refund in superior court against a governmental body is "an express waiver of sovereign immunity, and the State's consent to be sued must be strictly construed."[7]

In seeking to dismiss the appellants' action regarding the denial of their tax-refund requests, the Department argued that, because "[t]he doctrine of sovereign immunity requires that the conditions and limitations of the statute that waives

---

[6] OCGA § 48-2-35 (a).

[7] *Sawnee Elec. Membership Corp. v. Ga. Dep't of Rev.*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005) (citation omitted); *see also City of Atlanta v. Barnes*, 276 Ga. 449, 451 (3) (578 SE2d 110) (2003) ("When a statute provides the right to bring an action for a tax refund against a governmental body, that statute provides an express waiver of immunity and establishes the extent of the waiver (the amount of the refund) . . . ."), *superseded by statute*, OCGA § 48-2-35 (b) (5), *as recognized in Sawnee Elec. Membership Corp.*, 279 Ga. at 25 (3) n.1; *Ga. Emission Testing Co. v. Jackson*, 259 Ga. App. 250, 252 (576 SE2d 642) (2003) ("OCGA § 48-2-35 is a partial waiver of sovereign immunity by the State."). *See generally* GA. CONST. Art. I, Sec. II, Par. IX (e) ("Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.").

immunity be strictly followed,"[8] the appellants' failure to comply with a Department regulation applicable to dealers seeking tax refunds on behalf of customers barred the action on grounds of sovereign immunity and/or the failure to state a claim upon which relief can be granted. And as we have previously recognized, the Revenue Commissioner has "explicit authority to promulgate regulations for the enforcement of the Public Revenue Code and the collection of revenues thereunder."[9] Furthermore, we are mindful that with regard to statutes an administrative agency has the duty to enforce or administer, as well as rules and regulations an agency has enacted to fulfill its function, the agency's interpretations of these rules and regulations are to be given considerable weight and deference.[10]

---

[8] *Ga. Dep't of Labor v. RTT Assocs., Inc.*, 299 Ga. 78, 83 (2) (786 SE2d 840) (2016); *accord Dep't of Human Res. v. Hutchinson*, 217 Ga. App. 70, 71 (1) (456 SE2d 642) (1995); *Ingalls Iron Works Co. v. Blackmon*, 133 Ga. App. 164, 165 (210 SE2d 377) (1974).

[9] *Ga. Dep't of Rev. v. Ga. Chemistry Council, Inc.*, 270 Ga. App. 615, 616 (607 SE2d 207) (2004) (punctuation omitted); *see also* OCGA § 48-2-12 (a) ("The commissioner shall have the power to make and publish in print or electronically reasonable rules and regulations not inconsistent with this title or other laws or with the Constitution of this state or of the United States for the enforcement of this title and the collection of revenues under this title.").

[10] *See Ga. Dep't of Rev. v. Owens Corning*, 283 Ga. 489, 490 (660 SE2d 719) (2008) ("[T]he interpretation of a statute by an administrative agency which has the duty of enforcing or administering it is to be given great weight and deference.");

Here, the relevant regulation provides, in pertinent part, that

[i]n the case of taxes illegally or erroneously collected, *the dealer may secure a refund as provided in OCGA Section 48-2-35, provided, however, the dealer must affirmatively show* that the tax so illegally or erroneously collected was paid by him and not paid by the consumer, or *that such tax was collected from the consumer as tax and has since been refunded to the consumer.*[11]

The Department asserts that, per this regulation, before seeking a refund on behalf of their customers under OCGA § 48-2-35, the appellants were required to

---

*Pruitt Corp. v. Ga. Dep't of Comm. Health*, 284 Ga. 158, 159 (2) (664 SE2d 223) (2008) ("When an administrative agency decision is the subject of judicial review, judicial deference is to be afforded the agency's interpretation of statutes it is charged with enforcing or administering and the agency's interpretation of rules and regulations it has enacted to fulfill the function given it by the legislative branch."); *Kelly v. Lloyd's of London*, 255 Ga. 291, 293 (336 SE2d 772) (1985) ("It is a well-settled principle of law that even though an interpretation of a statute by an agency charged with the duty of enforcing it is not conclusive, it is entitled to great weight." (punctuation omitted)). *See generally* David E. Shipley, *The Chevron Two-Step in Georgia's Administrative Law*, 46 Ga. L. Rev. 871, 877 (I) (Summer 2012) (noting that recent decisions of the Supreme Court of Georgia "confirm that Georgia is a strong deference state where the courts will defer to the agency interpretation as long as it is not contrary to the statute" (punctuation omitted)). *But see* Jeffrey A. Pojanowski, *Without Deference*, 81 Missouri L. Rev. ___ (Forthcoming 2017) (exploring what judicial review of agency interpretations would look like if the Supreme Court of the United States abandoned *Chevron* deference in favor of *de novo* review), *available at* https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2806435.

[11] Ga. Comp. R. & Regs. 560-12-1-.25 (2) (emphasis supplied).

affirmatively show that the alleged erroneously or illegally collected tax had been refunded by them to their customers. But it is wholly undisputed in this case that, even now, the appellants have not refunded to their customers, the consumers, the tax that they allege was illegally or erroneously collected and for which the appellants, as dealers, sought a refund from the Department.

Nevertheless, the appellants argue that the Department's interpretation of the regulation is not supported by its plain language and is, in essence, unreasonable. The appellants are correct that OCGA § 48-2-35, which expressly authorizes refunds of allegedly erroneously or illegally paid sales taxes, "does not require that a dealer advance its own funds to customers before knowing if the Department will grant the claimed refund of sales tax." But as previously noted, the Revenue Commissioner has explicit *statutory* authority to "promulgate regulations for the *enforcement* of the Public Revenue Code and the collection of revenues thereunder"[12] with judicial deference afforded to "the agency's interpretation of rules and regulations it has

---

[12] *Ga. Chemistry Council, Inc.*, 270 Ga. App. at 616 (punctuation omitted) (emphasis supplied); *see also* OCGA § 48-2-12 (a) ("The commissioner shall have the power to make and publish in print or electronically reasonable rules and regulations not inconsistent with this title or other laws or with the Constitution of this state or of the United States for the enforcement of this title and the collection of revenues under this title.").

enacted to fulfill the function given it by the legislative branch."[13] To that end, under its power to promulgate regulations for the enforcement of the Public Revenue Code (of which OCGA § 48-2-35 is a part), the Department has enacted a regulation governing the procedure for dealers who seek to obtain refunds on behalf of their customers under OCGA § 48-2-35. And the Department interprets that regulation, Ga. Comp. R. & Regs. 560-12-1-.25 (2), as requiring dealers to refund the tax to customers/consumers prior to requesting a refund from the Department.

In considering the Department's interpretation of this regulation, we turn to *The Oxford English Dictionary*,[14] which defines "secure," the word with which appellants take issue, as meaning, *inter alia*, "[t]o ensure (a person's) obtaining (something)" and "[t]o get hold or possession of (something desirable) as the result of effort or

---

[13] *Pruitt Corp.*, 284 Ga. at 159 (2); *see also Atlanta Journal v. Babush*, 257 Ga. 790, 792 (2) (364 SE2d 560) (1988) ("[I]n construing administrative rules, 'the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the rule.'" (punctuation omitted)), *relying upon United States v. Larionoff*, 431 U.S. 864, 872 (II) (A) (97 SCt 2150, 53 LE2d 48) (1977) ("In construing administrative regulations, the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." (punctuation omitted)).

[14] *See Couch v. Red Roof Inns, Inc.*, 291 Ga. 359, 361 (1) (729 SE2d 378) (2012) (looking to dictionary for plain and ordinary meaning of word); *A.A. Professional Bail v. State*, 265 Ga. App. 42, 43 (592 SE2d 866) (2004) (same).

contrivance."[15] Thus, to the extent that the effort required for a dealer to "secure" a refund under Ga. Comp. R. & Regs. 560-12-1-.25 (2) is in any way ambiguous, we defer to the Department's interpretation of this regulation, which it enacted in order to fulfill the function delegated to it by our General Assembly.[16]

Given the foregoing, we are unpersuaded by the appellants' argument that the Department's interpretation is erroneous or unreasonable due to the language used in a portion of the regulation that concerns refunds for the "overpayment of sales tax paid to the State as a result of tangible personal property returned by the purchaser," and which provides two methods by which a dealer may be refunded for such overpayment.[17] One such method specifies that when "the property has been returned to the dealer after ninety (90) days following the original sale, the dealer may *request*

---

[15] THE COMPACT OXFORD ENGLISH DICTIONARY 1696 (2d ed. 1991).

[16] *See supra* notes 9-10 & 13; *see also Bentley v. Chastain*, 242 Ga. 348, 350-51 (1) (249 SE2d 38) (1978) ("Whether operating in the federal, state, or local sphere, agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems.").

[17] Ga. Comp. R. & Regs. 560-12-1-.25 (1).

a credit memorandum for use against subsequent taxes."[18] And upon approval of such

"request," the dealer "will be furnished with a credit memorandum authorizing a

deduction on the appropriate line of the Sales and Use Tax Report."[19] But the use of

"request" in this portion of the regulation, which deals with an entirely different set

of circumstances, does not render unreasonable an interpretation that the process by

which a dealer may "secure" a refund on behalf of its customers for "taxes illegally

or erroneously collected" requires repayment to customers prior to making a *request*

---

[18] Ga. Comp. R. & Regs. 560-12-1-.25 (1) (b) (emphasis supplied).

[19] *Id.*

for such a refund,[20] especially in light of the broad definition of "secure," discussed *supra*.[21]

Furthermore, and as an aside, we note that the appellants' own settlement agreement with their customers undercuts their assertion that an interpretation requiring repayment to consumers prior to seeking a refund is unreasonable or

[20] *See Ga. Oilmen's Ass'n v. Dept' of Rev.*, 261 Ga. App. 393, 398-99 (2) (582 SE2d 549) (2003) ("Because of agencies' presumed expertise in dealing with complex issues, we defer to the [the Department] on the issue of reasonableness unless there is evidence the regulation is arbitrary and capricious."), *cited with approval by Hill v. Owens*, 292 Ga. 380, 385 (2) (b) (738 SE2d 56) (2013); *cf. New Cingular Wireless PCS, LLC v. Director, Div. of Taxation*, 28 N.J. Tax 1, 16 (III) (A) (2014) (interpreting N.J.S.A. 54:32B-20 (a) as "contain[ing] a repayment provision that must be fulfilled before an 'actual' refund—the payment of money from the State treasury—can be made to a person required to collect the tax and *not* before the validity of the refund claim can be considered" (emphasis supplied)); *id.* at 16-17 (III) (A) (further noting that "[t]he Director has not promulgated regulations under the statute" and, as a result, "taxpayers and the courts have no written guidance, adopted through the Administrative Procedure Act, detailing the criteria that the Director will use to determine whether the repayment obligation in N.J.S.A. 54:32B-20 (a) has been satisfied"); N.J.S.A. 54:32B-20 (a) ("In the manner provided in this section the director shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application to the director for such refund shall be made within four years from the payment thereof. . . . Such application may also be made by a person required to collect the tax, who has collected and paid over such tax to the director, . . . but no actual refund of moneys shall be made to such person until the person shall first establish to the satisfaction of the director, under such regulations as the director may prescribe, that the person has repaid to the customer the amount for which the application for refund is made. . . .").

[21] *See supra* note 15 & accompanying text.

erroneous. Appellants argue that if repayment to customers was required before seeking a refund from the Department, should the Department refuse to pay, appellants "would have lost millions in its own funds – and the customers would have received refunds that the Department determined were not due." The very terms of the settlement agreement, however, undermine this argument:

> To the extent that any [t]axing [j]urisdiction requires that, prior to the [t]axing [j]urisdiction's grant and/or payment of a claimed refund of Internet Taxes, [Appellants] refund those amounts to the affected customers in the Settlement Class, the Settling Parties agree that such payment shall be made by [appellants] in escrow to a fund (the "Pre-Refund Escrow Fund") . . . .

The agreement goes on to provide that "[s]uch payments shall be made *contemporaneously with the filing of the refund claim*, if such requirement is known at such time, or within 15 days after receiving notice of such requirement by the [t]axing [j]urisdiction."[22] Further, under this section of the agreement, all settling class members agree that

> for purposes of satisfying the requirement of any [t]axing [j]urisdiction, that [appellants] refund taxes to the affected customers prior to granting or paying a refund claim, the payment by [appellants] of an amount

---

[22] (Emphasis supplied).

representing Internet Taxes paid by that [class member] into the Pre-Refund Escrow Fund will be considered the payment by [appellants] of such taxes to such [class member].

Finally, the agreement specifies that "[a]mounts paid to the Pre-Refund Escrow Fund shall be held in a mutually agreeable account maintained by a party unrelated to the Settling Parties, until the occurrence of" one of two so-called "Pre-Refund Escrow Release Events."

The first "Pre-Refund Escrow Release Event" deals with scenarios in which refund payments are made by the taxing jurisdiction. The agreement provides that if the taxing jurisdiction "pays monies to [appellants] or provides tax credits in full or partial satisfaction of the refund claims with the [t]axing [j]urisdiction," appellants become subject to additional provisions of the settlement agreement. One of those additional provisions specifies that if a taxing jurisdiction grants a refund to the appellants, the appellants "shall assign all of [their] rights, title and interest in the refund related to the members of the Settlement Class, subject to any claims or conditions that may be imposed on such refund by the [t]axing [j]urisdiction," and the refunded monies will be paid directly to escrow accounts established elsewhere in the settlement agreement. The other provision specifies that if the appellants receive a tax

14

credit from a taxing jurisdiction, they must "remit monies in the amount of the credit as they relate to members" of the settlement class to the escrow accounts established elsewhere in the agreement.

The second "Pre-Refund Escrow Release Event" deals with scenarios in which the taxing jurisdiction *denies* a refund. This portion of the agreement applies when

> a final determination has been issued, for which further appeal is either not available or not pursued, by either the [t]axing [j]urisdiction in question denying all or any portion of the refund claims for Internet Taxes filed with that [t]axing [j]urisdiction or by a court of competent jurisdiction in an action initiated to compel the [t]axing [j]urisdiction to act on the refund claim, which action results in no refund or credit being received by [appellants].

The paragraph that follows the description of these two "Pre-Refund Escrow Release Events" provides, in relevant part, that upon occurrence of such an event, "all amounts previously paid by [appellants] to the Pre-Refund Escrow Fund, and any interest earned thereon, that are attributable to the refund claims filed with the particular [t]axing [j]urisdiction at issue *shall be paid to [appellants]*."[23] Thus, if a refund is given by the taxing jurisdiction in some form, money is then paid directly

---

[23] (Emphasis supplied).

to class members via separate escrow accounts, and appellants receive back from the Pre-Refund Escrow Account what was pre-paid into it to satisfy the "pre-pay" requirements of the taxing jurisdiction. And if no refund is given by the taxing jurisdiction, the appellants still receive back from the Pre-Refund Escrow Account the amount that they pre-paid. Accordingly, the appellants' own settlement agreement contemplates a scenario in which pre-payment to the customer is required but an ultimate refund from the Department is never obtained; and in such a situation, there is no "windfall" to the customer because the amount pre-paid into escrow is returned to the appellants.

In sum, because the appellants *admit* that they have not repaid the alleged erroneously collected tax to their customers, as even their own settlement agreement contemplates, the trial court properly dismissed the action when such a prepayment was required by the Department regulations prior to requesting a refund.[24]

---

[24] *See Austin*, 294 Ga. at 774-75 ("A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought[.]" (punctuation omitted)); *Webb*, 328 Ga. App. at 63 (same).

2. The appellants also argue that the trial court erred in granting the motion to dismiss after concluding that (1) they lacked standing to seek a refund for taxes collected prior to May 5, 2009, and (2) the appellants' action for a refund is a class action barred by Georgia law. But because the motion was properly dismissed for a failure to state a claim upon which relief could be granted due to the appellants' admitted failure to refund the tax to customers prior to seeking a refund from the Department, we need not address these additional enumerations of error.[25]

Accordingly, for all of the foregoing reasons, we affirm the trial court's grant of the Department's motion to dismiss.

*Judgment affirmed. Reese and Bethel, JJ., concur*.

---

[25] *See, e.g.*, *Bobick*, 321 Ga. App. at 869-70 (4) (b) (affirming dismissal under "right for any reason" doctrine).