**FIFTH DIVISION**
**DILLARD, C. J.,**
**REESE, J., and COOMER, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 6, 2019**

# In the Court of Appeals of Georgia

A16A2003. NEW CINGULAR WIRELESS PCS, LLC et al. v.
GEORGIA DEPARTMENT OF REVENUE et al.

DILLARD, Chief Judge.

New Cingular Wireless PCS, LLC; Chattanooga MSA LP; Georgia RSA No. 3, LP; and Northeastern Georgia RSA Limited Partnership ("appellants") filed suit against the Georgia Department of Revenue ("the Department") and Lynnette T. Riley in her official capacity as commissioner, following the Department's refusal to issue a refund of what the appellants contend were erroneously paid taxes. The Department filed a motion to dismiss the appellants' action, which the trial court granted. Appellants then appealed to this Court, contending that the trial court erred in concluding that (1) they must first refund the allegedly erroneously collected taxes

to their customers before seeking a refund from the Department; (2) they lacked standing to seek a refund for taxes collected prior to May 5, 2009; and (3) the action for a refund was a class action barred by Georgia law.

In *New Cingular Wireless PCS, LLC v. Georgia Department of Revenue*, 340 Ga. App. 316 (797 SE2d 190) (2017), we affirmed the grant of the motion to dismiss, holding that, under the relevant regulation, appellants needed to first refund the allegedly erroneously paid sales taxes to customers before securing a refund from the Department.[1] But the Supreme Court of Georgia reversed our decision in *New Cingular Wireless PCS, LLC v. Georgia Department of Revenue*, 303 Ga. 468 (813 SE2d 388) (2018), and remanded the case for this Court to consider appellants' two remaining enumerations of error.[2] Having done so, we vacate our earlier opinion, adopt as our own the opinion and judgment of the Supreme Court as to the appellants' first claim of error, and now consider their remaining claims of error.

---

[1] *See* 340 Ga. App. at 323-24 (1).

[2] *See* 303 Ga. at 474 (2).

As provided in both the Supreme Court's opinion and our prior opinion, the facts of this case are as follows:

The appellants allege that from November 1, 2005 until September 7, 2010, they sold wireless Internet access services to Georgia customers, which were exempt from state sales tax under OCGA § 48-8-2. In November 2010, the appellants filed refund claims with the Department for sales tax that they claimed was, until September 2010, erroneously charged to Georgia customers on the purchase of wireless Internet access service. The Department officially refused to pay the requested refund claims on March 19, 2015. Accordingly, on April 17, 2015, the appellants filed their complaint to challenge this denial.

The Department answered and moved to dismiss for a lack of subject-matter jurisdiction and the failure to state a claim upon which relief could be granted. Thereafter, the Department amended its answer and attached as an exhibit a copy of a global settlement agreement entered into between the appellants and their customers. The Department argued that the complaint should be dismissed because (1) the appellants did not reimburse the alleged illegally collected sales tax to customers before seeking a refund from the Department, in violation of Department Regulation 560-12-1-.25; (2) the appellants lacked standing to file sales-tax-refund claims on behalf of customers for periods prior to May 5, 2009; and (3) the action was barred by Georgia class-action law.

Following a hearing on the motion to dismiss, the trial court granted it on all three grounds.[3]

With this factual and procedural backdrop in mind, we will now address the appellants' remaining claims of error.

1. First, we address the trial court's grant of the Department's motion to dismiss on the basis that the appellants lacked standing to file refund claims for periods prior to May 9, 2009.

The question of standing is a jurisdictional issue.[4] Indeed, as the Supreme Court of Georgia noted in its opinion, "sovereign immunity like various other rules of jurisdiction and justiciability is concerned with the extent to which a case properly may come before a court at all."[5] Additionally, our Supreme Court explained that

---

[3] *Id.* at 468-69 (punctuation omitted) (quoting *New Cingular Wireless PCS*, 340 Ga. App. at 316).

[4] *See Parker v. Leeuwenberg*, 300 Ga. 789, 790 (797 SE2d 908) (2017) ("Though the trial court did not address the question of standing, it is a jurisdictional issue[.]"); *see also Ford Motor Co. v. Young*, 322 Ga. App. 348, 351 (1) (745 SE2d 299) (2013) (noting that standing was one of two jurisdictional issues in the case); *In the Interest of M. B. B.*, 241 Ga. App. 249, 250 (1) (526 SE2d 76) (1999) (same).

[5] *New Cingular Wireless*, 303 Ga. at 470 (1) n.3 (punctuation omitted); *accord McConnell v. Dep't of Labor*, 302 Ga. 18, 18-19 (805 SE2d 79) (2017); *Consolidated Gov't of Columbus, Ga. v. P&J Beverage Co.*, 344 Ga. App. 482, 482 (1) (810 SE2d 640) (2018).

"there is agreement that OCGA § 48-2-35 . . . waive[s] the State's sovereign immunity to allow tax refunds," but that "[t]he only question is the extent of that waiver."[6] To that end, OCGA § 48-2-35 (a) provides, in pertinent part, that

> [a] taxpayer shall be refunded any and all taxes or fees which are determined to have been erroneously or illegally assessed and collected from such taxpayer under the laws of this state, whether paid voluntarily or involuntarily, and shall be refunded interest . . . on the amount of the taxes or fees from the date of payment of the tax or fee to the commissioner at an annual rate . . . .[7]

OCGA § 48-2-35 also provides that a "claim for refund of a tax or fee erroneously or illegally assessed and collected may be made by the taxpayer at any time within three years after[,]" in the case of a non-income tax or fee, "[t]he date of the payment of the tax or fee to the commissioner[.]"[8] And the statute further specifies that, "[f]or purposes of all claims for refund of sales and use taxes erroneously or illegally assessed and collected, the term 'taxpayer,' as defined under [OCGA §] 48-2-35.1,

---

[6] *New Cingular Wireless*, 303 Ga. at 470 (1) n.3 (punctuation omitted).

[7] OCGA § 48-2-35 (a).

[8] OCGA § 48-2-35 (c) (1) (A) (i).

5

shall apply."[9] In OCGA § 48-2-35.1 (d), "taxpayer" is defined as, *inter alia*, "a dealer as defined in [OCGA § 48-8-2 (8)] that collected and remitted erroneous or illegal sales and use taxes to the commissioner."[10]

---

[9] OCGA § 48-3-35 (f).

[10] In defining "taxpayer," OCGA § 48-2-35.1 (d) also provides that

[a] person that has erroneously or illegally paid sales taxes *to a dealer* that collected and remitted such taxes to the commissioner may file a claim for refund either initially with the commissioner or, alternatively, elect to seek a refund from the dealer, by submitting a written request for refund to the dealer, and file a claim for refund with the commissioner after being unable to obtain a refund from such dealer. Such person shall also be considered a taxpayer for purposes of filing a claim for refund with the commissioner under Code Section 48-2-35[.]

(Emphasis supplied). But such person may only do so if he or she meets certain delineated requirements also provided by the statute. *See* OCGA § 48-2-35.1 (d) (1)-(2); *see also Ga. Power Co. v. Cazier*, 321 Ga. App. 576, 578 (1) (740 SE2d 458) (2013) (explaining that, under OCGA § 48-2-35.1 (d) (1)-(2), "[i]f the person files a refund claim initially with the commissioner, the person must provide the department with a notarized form executed by the dealer which affirms, among other things, that the dealer remitted the taxes to the state and will not claim a refund of the same tax included in the person's refund request. But if the person files a refund claim with the commissioner after having been unable to obtain a refund directly from the dealer, the person must provide a letter or other information to the commissioner showing either that the dealer refused or was unable to refund the erroneously collected sales taxes, or that the dealer did not act upon the person's written refund request within 90 days" (citations omitted)).

6

Prior to May 5, 2009, "dealers" lacked standing to file claims for tax refunds on behalf of customers from whom a tax had been erroneously paid or illegally collected.[11] But, effective May 5, 2009, OCGA §§ 48-2-35 and -35.1 were amended to provide standing for dealers to seek such refunds.[12]

Here, the parties agree that appellants, as dealers, were permitted by statute to seek tax refunds on behalf of customers. But they disagree as to whether the amendments providing dealers with standing have retroactive or only prospective application. In this respect, our Supreme Court has repeatedly recognized that "[l]aws

---

[11] *See Sawnee Elec. Mem. Corp. v. Ga. Public Serv. Comm.*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005) ("We address first the question of the EMC's direct standing. Under OCGA § 48-2-35 (b) (4), one must be a 'taxpayer' to bring an action for a tax refund. . . . If the party remitting the tax to the governmental body did not bear the burden of the tax because it passed the tax on to its customers, the party remitting the tax does not have standing to file a claim for refund of state taxes. . . . Since the EMC did not bear the burden of the tax because it was passed on to its members/patrons, the EMC did not have direct standing to file a claim for refund of state taxes." (citations omitted)); *see also James B. Beam Distilling Co. v. State*, 263 Ga. 609, 611 (2) (437 SE2d 782) (1993) ("If the remitting party did not bear the burden of the tax, it is not entitled to bring a suit to recover a refund of any overpayment."); *Citibank (S.D.), N.A., v. Graham*, 315 Ga. App. 120, 123 (2) (726 SE2d 617) (2012) (interpreting prior version of OCGA § 48-2-35, and explaining that under that statute, "[o]nly the taxpayer who has the burden of paying the tax may receive a refund of sales tax paid").

[12] *See* 2009 Ga. Laws, p. 817-20, 824 §§ 3, 4, 9.

prescribe for the future."[13] Indeed, OCGA § 1-3-5 explicitly notes this and further explains that laws "ordinarily [cannot] have a retrospective obligation."[14] Thus, the settled rule for the construction of statutes is "*not* to give them a retrospective operation, unless the language so imperatively requires."[15] And a statute does not operate retrospectively in its legal sense "simply because it relates to antecedent facts[.]"[16] Instead, the relevant statutory text must plainly seek to "affect transactions which occurred or rights which accrued before it became operative as such, and which ascribe to them essentially different effects, in view of the law at the time of their occurrence."[17]

---

[13] *S. States-Bartow Cnty., Inc. v. Riverwood Farm Homeowners Assoc.*, 300 Ga. 609, 611 (797 SE2d 468) (2017) (punctuation omitted); *accord Fowler Props., Inc. v. Dowland*, 282 Ga. 76, 77 (1) (646 SE2d 197) (2007); *DeKalb Cnty. v. State*, 270 Ga. 776, 777 (1) (512 SE2d 284) (1999); *Bank of Norman Park v. Colquitt Cnty.*, 169 Ga. 534, 536 (150 SE 841) (1929) (Syllabus by the Court).

[14] OCGA § 1-3-5; *see also* GA CONST Art. 1, § 1, ¶ X ("No . . . retroactive law . . . shall be passed.").

[15] *Bank of Norman Park*, 169 Ga. at 536 (Syllabus by the Court) (emphasis supplied) (punctuation omitted).

[16] *DeKalb Cnty.*, 270 Ga. at 778 (1) (punctuation omitted); *accord Frantz v. Piccadilly Place Condo. Assoc., Inc.*, 278 Ga. 103, 105 (2) (597 SE2d 354) (2004); *Harrell v. City of Griffin*, 346 Ga. App. 635, 639 (2) (b) (Ga. App. June 27, 2018).

[17] *DeKalb Cnty.*, 270 Ga. at 778 (1) (punctuation omitted); *accord Harrell*, 346 Ga. App. at 639 (2) (b).

Additionally, as our Supreme Court has explained, "[l]egislation which involves mere procedural or evidentiary changes may operate retrospectively; however, legislation which affects substantive rights may only operate prospectively."[18] And the distinction is that a substantive law "creates rights, duties, and obligations while a procedural law prescribes the methods of enforcing those rights, duties, and obligations."[19]

With these guiding principles in mind, we note that, in essence, standing is the question of "whether the litigant is *entitled* to have the court decide the merits of the dispute or of particular issues,"[20] and litigants "must establish their standing to raise

---

[18] *Crane Composites, Inc. v. Wayne Farms, LLC*, 296 Ga. 271, 272 (765 SE2d 921) (2014); *accord Enger v. Erwin*, 245 Ga. 753, 754 (267 SE2d 25) (1980).

[19] *Crane Composites*, 296 Ga. at 272; *accord Polito v. Holland*, 258 Ga. 54, 55 (3) (365 SE2d 273) (1988); *see Murphy v. Murphy*, 295 Ga. 376, 377 (761 SE2d 53) (2014) ("[O]ne has no vested rights in any course of procedure, and the presumption against a retrospective statutory construction does not apply to statutory enactments which affect only court procedure and practice, even when the alteration from the statutory change results in a disadvantage to a party.").

[20] *Sherman v. City of Atlanta*, 293 Ga. 169, 172 (2) (744 SE2d 689) (2013) (punctuation omitted) (emphasis supplied); *accord Cotton Pickin' Fairs, Inc. v. Town of Gay*, 346 Ga. App. 327, 329 (1) (816 SE2d 160) (2018).

issues before they are *entitled* to have a court adjudicate those issues[.]"[21] Thus, standing is an entitlement, or a substantive *right*, to seek redress in a court of law. And because the amendments to OCGA §§ 48-2-35 and -35.1 provide dealers with standing—or the *right*—to seek such refunds, and because those amendments were effective on May 5, 2009, the trial court correctly concluded that the appellants lacked standing to seek a refund for taxes collected prior to May 5, 2009 (*i.e.*, the taxes collected from November 1, 2005, through May 4, 2009).[22]

2. Next, with regard to taxes collected *after* May 5, 2009, we consider the appellants' argument that the trial court erred by concluding that their action for a

---

[21] *Sherman*, 293 Ga. at 172 (2) (punctuation omitted) (emphasis supplied); *accord Cotton Pickin' Fairs*, 346 Ga. App. at 329 (1).

[22] The appellants maintain that prospective application of the amendments is "illogical" because it "would cause dealers to only have the full ability to pursue refunds three years after May 5, 2009, when the three-year refund statute of limitations would be available." This argument is a nonstarter. Indeed, as appellants acknowledge, "on the effective date of May 5, 2009, no dealer could have filed a refund claim because only prospective periods would be eligible." This is not a "three-year waiting period," as appellants claim, but rather the three-year period delineated in OCGA § 48-2-35 (c) (1) (A) provides a time limit—a statute of limitations—in which to seek a refund. *See, e.g.*, *Amu v. Barnes*, 283 Ga. 549, 551 (662 SE2d 113) (2008) ("[A] statute of limitations is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued." (punctuation omitted)).

refund was a class-action suit barred by Georgia law. On this point, we agree with the appellants.

OCGA § 48-2-35 (c) (1) (D) provides that "[a] claim for refund may not be submitted by the taxpayer on behalf of a class consisting of other taxpayers who are alleged to be similarly situated." And OCGA § 48-2-35 (c) (5) also provides that "[a]n action for a refund pursuant to paragraph (4) . . . shall not be brought by the taxpayer on behalf of a class consisting of other taxpayers who are alleged to be similarly situated." Thus, the trial court was correct in its determination that class-action claims for refunds are "expressly prohibited by Georgia's refund statute."

But where the trial court erred was in determining that the appellants' action for a refund was a class-action suit barred by law. While it is true that the appellants were ordered, as part of a settlement agreement, to seek refund claims on behalf of a settlement class consisting of its customers, the appellants are not seeking refund claims "on behalf of a class consisting of other taxpayers who are alleged to be similarly situated," which is what the statute prohibits. Instead, the appellants, as dealers, sought refunds on behalf of customers, to whom the appellants intend to remit the funds. The appellants did *not* file on behalf of other similarly situated

11

taxpayer-dealers,[23] and the trial court erred in concluding otherwise. Accordingly, we reverse the trial court's dismissal as to the appellants' action for a refund of taxes collected after May 5, 2009.

For all these reasons, we vacate our earlier opinion and adopt as our own the opinion and judgment of the Supreme Court as to the appellants' first claim of error. We also affirm the trial court's dismissal of the action for a refund of taxes collected between November 1, 2005, and May 4, 2009, but reverse the trial court's dismissal of the action for a refund of taxes collected after May 5, 2009.

*Judgment affirmed in part and reversed in part. Reese and Coomer, JJ., concur.*

---

[23] *See* OCGA § 48-2-35.1 (d) (defining "taxpayer" as both "a dealer as defined in [OCGA § 48-8-2 (8)] that collected and remitted erroneous or illegal sales and use taxes to the commissioner" *or* "[a] person that has erroneously or illegally paid sales taxes *to a dealer* that collected and remitted such taxes to the commissioner"); *see also* OCGA § 9-11-23 (setting forth the requirements for a class-action suit). *Cf. Herring v. Ferrell*, 233 Ga. 1, 1-2 (1) (209 SE2d 599) (1974) (holding that action was a class action when "five persons, including petitioner . . . , brought an action on their own behalf and on behalf of all other taxpayers of Grady County who were similarly situated"); *Cheely v. State*, 165 Ga. App. 755, 756-57 (302 SE2d 435) (1983) (affirming trial court's determination that action was not a class action, and noting that "while this intervention by certain citizens and taxpayers attacking the validity and binding effect of the contract . . . has reference to 'all citizens, residents and property owners thereof' . . . , the intervention was not characterized as an intervention by a class nor did the orders of the court make it into a class action, and we do not deem such intervention to be a statutory class action . . . .").