308 Ga. 729
FINAL COPY

S19G0802.  NEW CINGULAR WIRELESS PCS, LLC et al. v.
DEPARTMENT OF REVENUE et al.

BOGGS, Justice.

After nearly ten years of litigation, this Court granted a second petition for certiorari in this dispute over the refund of millions of dollars in Georgia sales and use taxes that allegedly violated a federal statute. In 2010, New Cingular Wireless PCS, LLC, and three other AT&T Mobility subsidiaries (collectively, "AT&T") filed refund claims with the Georgia Department of Revenue seeking the return of the sales and use taxes that AT&T had collected from its customers and turned over to the Department. In 2015, the Department denied the claims, and AT&T filed a complaint in DeKalb County Superior Court to compel the refunds.

In 2016, the trial court dismissed the complaint on three grounds: (1) a Georgia regulation required "dealers" like AT&T to return the sums collected from their customers before applying to

the Department for a refund of the illegal taxes; (2) AT&T lacked standing to seek refunds of taxes for periods prior to May 5, 2009, the effective date of the General Assembly's amendment to the refund statutes to allow dealers to seek refunds on behalf of their customers, see Ga. L. 2009, p. 816, §§ 3, 4; and (3) AT&T's claims amounted to a class action barred by the refund statutes.

In 2017, the Court of Appeals affirmed the trial court's dismissal order on the first ground. See *New Cingular Wireless PCS, LLC v. Ga. Dept. of Revenue*, 340 Ga. App. 316 (797 SE2d 190) (2017) ("*New Cingular I*"). We granted certiorari and reversed that ruling, holding that the regulation, as properly construed, did not require dealers to return the sums collected before applying for a refund. See *New Cingular Wireless PCS, LLC v. Ga. Dept. of Revenue*, 303 Ga. 468, 471-474 (2) (813 SE2d 388) (2018) ("*New Cingular II*"). We also vacated the Court of Appeals' judgment in part and remanded the case to the Court of Appeals with the direction to consider the second and third grounds for the trial court's dismissal order. See id. at 470 (1), 474 (3).

On remand, the Court of Appeals upheld the trial court's ruling that AT&T lacked standing to seek refunds for periods prior to the effective date of the 2009 amendments to the refund statutes allowing dealers to seek refunds on behalf of their customers. See *New Cingular Wireless PCS, LLC v. Ga. Dept. of Revenue*, 348 Ga. App. 516, 520 (1) (823 SE2d 833) (2019) ("*New Cingular III*"). See also OCGA §§ 48-2-35, 48-2-35.1 (d).[1] We granted AT&T's petition for certiorari, posing the following question: "Did the Court of Appeals err in holding that the plaintiffs lacked standing to file refund claims for periods prior to May 5, 2009?" For the reasons discussed below, we conclude that the Court of Appeals did err. We therefore reverse in part and we again remand this case to the Court of Appeals.

As amended in 2009, OCGA § 48-2-35 (a) provides in relevant part:

A taxpayer shall be refunded any and all taxes or

---

[1] The Court of Appeals also reversed the trial court's ruling that AT&T's claims were barred as a class action. See *New Cingular III*, 348 Ga. App. at 521-522 (2). The Department did not file a petition for certiorari seeking review of that holding, which is not at issue here.

fees which are determined to have been erroneously or illegally assessed and collected from such taxpayer under the laws of this state, whether paid voluntarily or involuntarily, and shall be refunded interest, except as provided in subsection (b) of this Code section[.]

Subsection (f) of the same Code section provides: "For purposes of all claims for refund of sales and use taxes erroneously or illegally assessed and collected, the term 'taxpayer,' as defined under Code Section 48-2-35.1, shall apply." Subsection (d) of OCGA § 48-2-35.1 provides:

> Except as provided for in this subsection, for the purposes of all claims for refund of sales and use taxes erroneously or illegally assessed and collected, the term "taxpayer" as used in Code Section 48-2-35 shall mean a dealer as defined in Code Section 48-8-2 that collected and remitted erroneous or illegal sales and use taxes to the commissioner.[2]

In *New Cingular III*, the Court of Appeals correctly stated the general principle that "laws prescribe for the future" and "ordinarily cannot have a retrospective operation." (Citations, punctuation and footnotes omitted.) 348 Ga. App. at 519 (1). The Court of Appeals

---

[2] OCGA § 48-2-35.1 (d) goes on to prescribe the procedure for "[a] person that has erroneously or illegally paid sales taxes to a dealer" to file a claim for refund directly.

also correctly recognized that "legislation which involves mere procedural or evidentiary changes may operate retrospectively; however, legislation which affects substantive rights may only operate prospectively," and that "a substantive law creates rights, duties, and obligations while a procedural law prescribes the methods of enforcing those rights, duties, and obligations." (Citations, punctuation and footnotes omitted.) Id. at 520 (1). And the Court of Appeals correctly stated that "a statute does not operate retrospectively in its legal sense simply because it relates to antecedent facts." (Citation and punctuation omitted.) Id. at 519 (1).

However, in applying these principles to the facts here, the Court of Appeals reasoned that, because standing is the question of "whether the litigant is *entitled* to have the court decide the merits of the dispute or of particular issues," standing therefore is "an entitlement, or a substantive right," and that the 2009 amendments to the refund statutes thus created a substantive right and may not be applied retrospectively. (Citations, punctuation and footnotes omitted; emphasis in original.) *New Cingular III*, 348 Ga. App. at

520 (1). This ultimate conclusion was erroneous.

Where the Court of Appeals went astray was in declaring that a statute broadening standing always and necessarily creates "a substantive right," so that such a statute "may only operate prospectively." (Citations, punctuation and footnote omitted.) *New Cingular III*, 348 Ga. App. at 520 (1). It is true that, in order to maintain an action, a party "must establish standing to sue on the ground asserted, which requires showing an injury in fact that was caused by the breach of a duty owed by the defendants to the plaintiffs and that will be redressed by a favorable decision from the court." *Ames v. JP Morgan Chase Bank*, 298 Ga. 732, 738 (3) (b) (783 SE2d 614) (2016). See also *Granite State Outdoor Advertising v. City of Roswell*, 283 Ga. 417, 418-419 (1) (658 SE2d 587) (2008). But it does not follow that standing to sue is necessarily a substantive right. For example, standing may be granted at common law or by statute for the special purpose of representing others in the assertion of their claims. This is generally termed "representational standing." As the United States Supreme Court has observed,

the entire doctrine of "representational standing," of which the notion of "associational standing" is only one strand, rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition or by statute) are sufficient to rebut the background presumption (in the statutory context, about [the legislature's] intent) that litigants may not assert the rights of absent third parties.

(Citations and footnotes omitted.) *United Food & Commercial Workers Union Local 751 v. Brown Group*, 517 U. S. 544, 557 (III) (C) (116 SCt 1529, 134 LE2d 758) (1996) (noting common-law concept of the next friend as well as federal statutory provisions for representational standing).

OCGA § 9-11-17 (a) summarizes the instances under which a representative may bring an action in Georgia for the benefit of another:

An executor, an administrator, a guardian, a bailee, a trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may bring an action in his own name without joining with him the party for whose benefit the action is brought; and, when a statute so provides, an action for the use or benefit of another shall be brought in the name of the state.

Perhaps the most familiar instance of representational standing is

found in OCGA § 9-11-17 (c):

> Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may bring or defend an action on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative, he may bring an action by his next friend or by a guardian ad litem.

Other statutory provisions permit certain State agencies and officials to assert legal claims on behalf of individuals. For example, the Department of Human Resources has standing under OCGA § 19-11-12 (d) (4) (B) to petition the superior court for child support modification, even when the State has no direct interest because the child is not receiving public assistance. See *Falkenberry v. Taylor*, 278 Ga. 842, 843 (607 SE2d 567) (2005). Similarly, the Attorney General or a district attorney has standing under OCGA § 53-12-174 to enforce the terms of a charitable trust in the interest of the beneficiaries. See *Cronic v. Baker*, 284 Ga. 452, 453-454 (1) (667 SE2d 363) (2008) (decided under former OCGA § 53-12-115). In none of these situations does a statute or common law grant to a

representative a right to recover for itself, as opposed to for and on behalf of the real party in interest.[3]

Similarly here, contrary to the Court of Appeals' assertion in *New Cingular III*, the "dealer" acquires no substantive "right" to a refund under OCGA § 48-2-35.1. Subsection (d) of that statute specifically defines as a "taxpayer" "a dealer as defined in Code Section 48-8-2 that *collected and remitted* erroneous or illegal sales and use taxes to the commissioner." (Emphasis supplied.) The additional provisions of the statute make clear that a refund claim may be filed by either the dealer or a "customer," defined as "[a]

---

[3] As we observed in *Aldridge v. Ga. Hospitality & Travel Assn.*, 251 Ga. 234 (304 SE2d 708) (1983), the concepts of real party in interest, capacity, and standing are related, but different. Id. at 235 (1) (citing 6A Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 1542 (1971) (hereinafter Wright & Miller)). Moreover,

> it should be noted that the question of who is the real party in interest should be distinguished from the question of in whose name an action may be brought. State law may provide that a particular plaintiff has a cause of action but that the claim should be prosecuted in the name of another party. In that situation the federal court will allow the claim to be asserted by plaintiff who has a substantive right under state law, which makes plaintiff the real party in interest for purposes of Rule 17 (a). In short, the question of in whose name the action should be brought is a procedural one. . . .

Wright & Miller § 1544 (3d ed. rev. 2020).

person that has erroneously or illegally paid sales taxes to a dealer that collected and remitted such taxes to the commissioner." OCGA § 48-2-35.1 (d). The customer may seek a refund either from the Department or from the dealer, subject to the procedures in paragraphs (d) (1) and (d) (2) designed to prevent a double recovery. A dealer, on the other hand, "must affirmatively show that the tax so illegally or erroneously collected was paid by him and not paid by the consumer, or that such tax was collected from the consumer as tax and has since been refunded to the consumer." Ga. Comp. R. & Regs. r. 560-12-1-.25 (2).

Therefore, as we previously explained in *New Cingular II*, 303 Ga. at 471-472 (2), the statutory and regulatory scheme itself demonstrates that the dealer as representative acquires no right to a tax refund. The dealer makes no claim for itself but only on behalf of the real party in interest, just as a guardian ad litem or next friend acquires no "right" in the underlying claim of the minor or incapacitated person. See, e.g., *Fuller v. Dillon*, 220 Ga. 36, 43 (3) (136 SE2d 733) (1964) (noting that next friend of ward "has no direct

pecuniary interest that would authorize her to sue in her individual capacity").

The Department relies upon *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22 (608 SE2d 611) (2005), in which an electrical membership corporation ("the EMC") was barred from seeking a sales tax refund on behalf of its members under former OCGA § 48-2-35. The Department contends that *Sawnee* shows that dealers lacked standing to file claims for refunds prior to the amendment of OCGA §§ 48-2-35 and 48-2-35.1, and that the amendments therefore created a new, substantive right in dealers to seek a refund, thus barring retrospective application. But while *Sawnee* did involve a claim for the refund of sales taxes, it is distinguishable here. The EMC claimed "associational standing" on the basis of its members' interest. That basis for standing, while constituting a subset or "strand" of representational standing, see *United Food*, 517 U. S. at 557 (III) (C), is significantly limited in its scope. See generally *Aldridge v. Ga. Hospitality & Travel Assn.*, 251 Ga. 234, 235 (304 SE2d 708) (1983) (adopting three-part test for

associational standing set forth in *Hunt v. Washington State Apple Advertising Comm.*, 432 U. S. 333, 341 (97 SCt 2434, 53 LE2d 383) (1977)).

In *Sawnee*, we concluded that the EMC was not a "taxpayer" within the meaning of former OCGA § 48-2-35, and that sovereign immunity prohibited it, as a non-taxpayer, from asserting associational standing in a tax refund case under the Code section then in effect. 279 Ga. at 25 (3). Here, in contrast, AT&T is claiming representational standing under the amended OCGA §§ 48-2-35 and 48-2-35.1 (d), which expressly grant it standing as a "taxpayer."[4]

In sum, the representational standing granted to AT&T by the amended statute is not a substantive change in the law. It creates no new obligations and grants no substantive rights that did not

---

[4] While the Department asserts that sovereign immunity bars AT&T's pre-amendment claims, the revised statute expressly defines dealers as taxpayers for purposes of OCGA § 48-2-35, and, as we observed in *New Cingular II*, "there is agreement that OCGA § 48-2-35 does waive the State's sovereign immunity to allow tax refunds. See *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22 (2) (608 SE2d 611) (2005). The only question is the extent of that waiver." *New Cingular II*, 303 Ga. at 470 (1) n.3. And, as we noted in *Sawnee*, the waiver addresses the tax refund claim, not the party authorized to seek it. 279 Ga. at 23 (2).

exist before. The Department is still obligated to return the wrongfully imposed sales tax to the customer, whether directly or by way of a dealer. See OCGA § 48-2-35 (a). The amended statute does not change the right of customers to recover the wrongfully imposed sales taxes that dealers collected on behalf of the Department, and it gives no right to the dealer to obtain any refund for itself. Rather, it merely sets out a procedure to facilitate the recovery of sales taxes, which are not a large amount for any single customer, but in the aggregate constitute a substantial sum.[5] The revised statute is therefore not substantive but procedural. See, e.g., *Mason v. Home Depot U.S.A*, 283 Ga. 271, 278 (4) (658 SE2d 603) (2008) (amended statute governing expert witnesses procedural in nature).

Because the statute is procedural and does not alter or create any rights or obligations, the amendment properly may be applied retrospectively. See Mason, 283 Ga. at 278 (4). See also *Polito v. Holland,* 258 Ga. 54, 55 (2) (365 SE2d 273) (1988) ("[W]here a

---

[5] As we noted in *New Cingular II*, AT&T's initial request for a refund amounted to nearly $6 million. See 303 Ga. at 468 n.1.

statute governs only procedure of the courts, including the rules of evidence, it is to be given retroactive effect absent an expressed contrary intention."). Thus, AT&T has statutorily granted representational standing to recover wrongfully paid sums on behalf of and for the benefit of its customers. To the extent, therefore, that the Court of Appeals held that AT&T lacked standing to file a claim on behalf of its customers for any taxes for periods before May 5, 2009, the Court of Appeals' judgment is erroneous and must be reversed.[6] Accordingly, we reverse in part the Court of Appeals' judgment, and we remand this case to the Court of Appeals.

*Judgment reversed in part and case remanded. All the Justices concur, except Peterson and Bethel, JJ., disqualified, and Warren, J., not participating.*

DECIDED MAY 18, 2020.

Certiorari to the Court of Appeals of Georgia — 348 Ga. App. 516.

*Bryan A. Vroon; Margaret C. Wilson*, for appellants.

*Christopher M. Carr, Attorney General, W. Wright Banks, Jr., Deputy Attorney General, Alex F. Sponseller, Senior Assistant Attorney General, John S. Forbes, Assistant Attorney General*, for appellees.

---

[6] We note that, as AT&T concedes, such claims will be subject to the three-year statute of limitation provided by OCGA § 48-2-35 (c).